COLEMAN B. FERRILL and DAVIS PACE, Executors of Mary C.
Perryman, deceased, plaintiffs in error, vs. JAMES PERRY-
MAN, defendant in error.

[1.] Upon a bill filed by the representatives of a deceased wife, to enforce her marital
rights secured to her under a deed of settlement with the husband, where the construc-
tion of the instrument is doubtful, and there are collateral facts which may be affected
by the answer of the defendant, the bill will not be dismissed on demurrer, but re-
tained until the coming in of the answer.

[2.] If a bill is demurred to for want of equity, the Court will not dismiss it for want of
proper parties, provided there be equity in the bill.

In Equity.    In Marion Superior Court.    Demurrer deci-
ded by JUDGE WORRILL.    March Term, 1861.

The plaintiffs in error, as executors of Mary C. Perryman,
deceased, filed their bill against the defendant.    It made the
following case:

Mrs. Perryman, before her intermarriage with the defen-
dant, was Mary C. Wilkinson.    She had in her possession,
in her own right, besides certain negroes not claimed in this
suit, six promissory notes and one account on John Wilkin-
son, amounting to over $7,000, a carriage and horses worth
$700, and household and kitchen furniture worth $500.
This was her condition on the 13th of August, 1850, at which
time she contracted with defendant that a marriage should
be solemnized between them, on condition that all the pro-
perty she then owned, as well as all she had in expectancy, or
might acquire by purchase or inheritance, should remain to
their joint use during their joint lives, and if she survived
him, then to herself, and if he survived her, then to be
turned over to such person as she, by deed or will, should
direct, and if she died without so disposing of it, then at her
death, to be turned over to Thomas C. Spicer, as trustee, for
the use of her children, grand-children, and heirs at law, as
if the marriage had not taken place and she had died a *feme-
sole*.

To carry this into effect, she and defendant, on the day

mentioned above, entered into a written contract, appended as an exhibit to the bill.    She believing that the same was sufficient to carry out the agreement, the marriage was then solemnized; but it was afterwards discovered that the writing did not fully express the understanding of the parties, in this: that it did not fully provide for securing to her all of her property besides the negroes, and did not provide that in case she died without disposing of it by deed or will, it should be turned over to her trustee.    On the 5th of October, 1850, the defendant made a deed to supply these deficiencies, a copy of which is to the bill annexed.

The defendant reduced all of said property to his possession.    He collected the notes, and applied the money to his own use, except as here explained.    From the estate of John Wilkinson, a son of Mrs. Perryman, who died after the marriage, and of whom she was an heir-at-law, he received $2,000; with half of which, or with that amount of her money, he purchased a negro woman named Martha and her child, now worth, with four other children since borne by the woman, $4,700.    He admitted then, and has frequently admitted since, that this purchase was for Mrs. Perryman, and made with her money.    During her life, he ever admitted that he was entitled only to the use of the money he received on her account.    He received some money from Spicer, her trustee, collected on one of the notes upon John Wilkinson, mentioned at the outset of this statement, and gave a receipt for it, worded thus: " Albany, Georgia, Februrary 4th, 1852.    Received of Thomas C. Spicer, trustee for Mary C. Perryman, $99.88, being part of the money belonging to her."

Mrs. Perryman made her last will in 1858, bequeathing her whole estate to her children and grand-children, and appointing the complainants executors, a copy of which is annexed to the bill.    She died in 1860, and her will has been probated and admitted to record.    The executors have made demand upon defendant for all money, notes, and other property in his possession, belonging to her estate, including the

negro woman Martha and her children; which demand has been met by a refusal, the defendant pretending that he is entitled to hold all under the marriage settlement.

The bill prays for discovery, alleging that the facts charged cannot otherwise be proven; for a decree that defendant pay to complainants all money received for and on account of their testatrix, and turn over to them the woman Martha, and her children; and for such other and further relief, etc.

The written contract referred to in the bill as having been executed in contemplation of the marriage, bearing date August 13th, 1850, was signed by the defendant, his intended wife, and the trustee, Thomas C. Spicer. By it she relinquished all claim to any part of the property then owned by the defendant, and renounced her right to inherit any of it at his death, stipulating that it should descend just as if the marriage had never taken place. It then recited that she was possessed " of a considerable estate of personal property, the following negroes—(describing eleven); and also some property in expectancy," and that it had been agreed between the defendant and Spicer that he, defendant, during the joint lives of himself and his intended wife, should have, receive and enjoy the interest, rents, hire, and profits of the same, but that after the death of either, the same to be at her disposal, notwithstanding her coverture. After which recital, the instrument went on to convey from the said Mary C. (afterwards Mrs. Perryman) to the said Spicer, the negroes described in the recital, and " said property in expectancy,"—to hold in trust (1.) for her and her assigns until the marriage; (2.) then in trust, to allow the defendant, during the joint lives of himself and wife, to have, receive, and enjoy the negroes, together with the use, profits, and interest thereof, and to have the entire use and control of the same; (3.) and after his death, if his wife should survive him, in trust to transfer and convey to her all the property then held under this deed; (4.) but she dying before him, then to convey the same to such person or persons as she might by deed or will appoint; (5.) and in default of such

Ferrill et al. vs. Perryman.

appointment, then to hold the same for his use, during his life, suffering him to receive the use, hire, profits, and interest; (6.) and after his death, to hold the same for the use of such heirs, or legal representatives of the wife, as would, by the statute of distributions, be entitled thereto in case she has died seized and possessed thereof intestate.

To the deed referred to in the bill as having been executed by the defendant on the 5th of October, 1850, only himself and Spicer, the trustee, were parties, and the defendant alone signed it. It was framed for only the one party to execute it; and seems to have been written upon the back of the former instrument, or, at all events, intended to accompany it. It recites that there was an error in that instrument in giving him, the defendant, the use and enjoyment of the property in case he survived his wife; and he therefore conveys to the said Spicer, by this deed, for the purposes set forth in the former, all his right or interest after her death in any of the property conveyed by said former deed; declaring his consent that if she should die before him, to turn over to Spicer, the trustee, all the property mentioned in the former deed, as well as all that she might acquire by descent, purchase, or inheritance; and covenanting that all the stipulations contained in "this deed of relinquishment" shall be fully carried out by himself, his heirs and legal representatives.

The defendant demurred to the bill generally, for want of equity; and the Court sustained the demurrer and dismissed the bill.

This is alleged as error.

BLANFORD & CRAWFORD, and B. HILL, for plaintiffs in error.

SMITH, for defendant.

LUMPKIN, C. J.

The real conflict in this case is, whether the choses in action which belonged to Mrs. Wilkinson at the time of the intermarriage, were secured to her by the two deeds to which Mr. Perryman became a party, he being entitled to the use of the money only during his wife's life time?

These instruments, copies of which are attached to the pleadings, are not very accurately or artistically drawn. Whether the want of perspicuity was intentional, as insinuated by complainant's solicitor, we know nothing. Upon the casual perusal of these documents, the reservation* of the marital rights of *both* parties to the property of the other, seems to have been intended; and so, upon the first blush, the choses in action belonging to Mrs. Wilkinson, were not included in the writings. But upon a closer scrutiny of the papers, we are not satisfied that such is the fact.

We think it apparent from the instruments, that the intention of the parties was and is to secure *all* of Mr. Perryman's property, of whatsoever kind, to him and his heirs, free from any marital rights therein *to be acquired* by his intended wife; and in *like manner*, to secure to Mrs. Perryman *all of her property*, of whatsoever kind, to her and her heirs and legatees free from any marital rights therein to be acquired by Mr. Perryman.

In the clause stipulating for the husband, his estate is spoken of as " a considerable estate, real and personal," to wit, the following negroes—(naming them); yet it is evident that *all* his estate real and personal is intended.

And on the part of the wife it is said, that she " is in like manner possessed of a *considerable estate of personal property*," the following negroes, to wit—(naming them).

Now, does the naming of these negroes, on the side of Mr. Perryman, so limit the subject-matter of the contract as to them, as to exclude all else of personal property? The Court below held, that the naming of Perryman's (the husband's) negroes did not have that effect as to Perryman's side of the agreement: why should it on Mrs. Perryman's part?

* Thus in the manuscript, but, perhaps, *renunciation* was the word intended.—REP.

Then again, it may be argued from the fact that her property in *expectancy* is conveyed and secured to her in this instrument, is evidence that *all* her *personal* propeperty *in presenti* was intended to be conveyed.

In the clause of the instrument giving the future husband of the property intended to be secured to the future wife, it is described as " the said personal property, estate and negroes of said Mary C. Wilkinson above described, showing, it would seem, that *more* is embraced than negroes *in presenti*, and bequests to her *in futuro*.   Because it is referred to as the said (the before described) " personal property, estate and negroes," and referring to the property *in presenti* because described as the property of the said Mary C. Wilkinson.

If you limit the settlement to the negroes alone, then the words " personal property and estate" are surplus words and have no meaning; and if the settlement, to negroes and future bequests, then the words "estate and negroes" cover the conveyance, and the words " personal property" are surplusage and receive no meaning.   Whereas, interpreted in the manner contended for by the other side, all the words used have their appropriate meaning and effect, not otherwise.

It is insisted that, because, in the after conveyance to the trustee in the same instrument, the subject-matter is confined to negroes, that, therefore, nothing else. passed or was intended to pass.   But this does not necessarily follow.   The covenant between Perryman and wife should be considered, as well as the *habendum* to the trustee; and the construction (*Chitty on Contracts*, 20,) is to be on the entire instrument, and not merely on disjointed parts, so as to get at the true intention of the parties, as gathered from the whole instrument.

And Courts of Equity, especially, will effectuate the true intent and meaning of the parties to the settlement, irrespective of the words used by them in attempting to carry the agreement into effect.

Might not this be treated as a mere clerical omission,

because it is thereafter, and in the same instrument and clause, provided that, in the event she should survive him, (Perryman) that then the trustee should re-convey all the estate and property then held.

Again, in giving Perryman power to collect, use and have the annual profits, etc., the words used are, "to collect and receive, from time to time, the use, hire, profits, and interest of the trust estate," seemingly referring to the fact that her choses in action had been conveyed to the trustee.

Mr. Perryman, by a supplemental deed executed after marriage, makes a relinquishment of part of the rights secured to him under the agreement, in the event of his surviving his wife. The preamble to the supplemental deed explains the first, and favors the construction insisted upon by Mrs. Perryman's counsel. It recites that "whereas, there is a clause in the above recited deed that gives to me the use and enjoyment of the property of Mary C. Wilkinson, during my life, in the event of my surviving her; and, whereas such was not the intention of the parties to the deed at the time the same was made, I now," etc.

It is argued that this addenda is, *per se*, a good declaration of trust from Mr. Perryman to his wife, as to property existing at the time of the marriage. 10 *Ga. R.*, 541-43.

The receipt given by Mr. Perryman to Spicer for money collected on Wilkinson's notes, owned by Mrs. Wilkinson at the time of the marriage, has a tendency to establish the trust, and that such was the understanding of Mr. Perryman at least.

Taking, therefore, the allegations in the bill, which are to be considered as true, the receipt given by Perryman to Spicer, the bill should not be dismissed on demurrer, but the case should be answered. We do not wish to be understood as committed upon the merits. We have formed no settled opinions upon the subject.

As to the objection that Spicer should be made a party complainant, if the bill has equity in it it should not be dismissed for want of proper parties, especially on demurrer.

Judgment reversed.