JOHN ARDIS, trustee, plaintiff in error, *vs.* JOSEPH J. PRINTUP, administrator, *et al.*, defendants in error.

1. Ante-nuptial contracts in consideration of marriage to be solemnized, like wills, should be liberally construed to carry into effect the intention of the parties.

2. The rules of grammatical construction usually govern, but, to effectuate the intention, they may be disregarded, and conjunctions be substituted for each other.

3. An express trust may depend for its operation upon a future event, and is then a contingent trust.

4. In this case, the intended wife with the consent of the future husband, conveyed her property to a trustee, for the joint use and maintenance of both husband and wife, for and during their joint lives, the property to be under the control and management of the husband, but not to be in any manner liable for his contracts, then to the survivor for and during his or her natural life, and in case of the husband's survivorship, there being issue, to remain under his management during his life, then to vest in and become the property of the child or children of the wife, the issue of the marriage, living at the time of the death of said survivor. But if there be no issue of said marriage, or if said issue shall die in the lifetime of such survivor, without leaving issue alive at the time of the death of said survivor, said survivor shall take an absolute estate in said property. And if the said wife survive the husband and marry again, and at the time of her death, there be issue of the present contemplated marriage, and also issue of any such subsequent marriage then living, the issue of such marriage shall take an interest in said property in the same manner and to the same extent, as if it, or they, were the issue of the first marriage. And in a subsequent part of the deed it is declared that, "if *at any time* thereafter it shall be deemed advisable or necessary by said husband and wife, or the *survivor* of them, the said trustee, with the written consent and request of the said husband and wife, or the survivor of them, may sell, exchange or otherwise dispose of all or any part of said property, but the proceeds of such sale, exchange or other disposition, and the increase thereof, shall be held subject to the uses and purposes hereinbefore mentioned."

After the marriage had been solemnized, the husband died, leaving no issue by the wife, she afterwards married again, and had two children by the last husband: *Held*, that the scope and spirit of the marriage settlement embrace the children of the second marriage as beneficiaries, though there were no children of the first marriage, and that the trust was not executed at the death of the first husband; but the trustee still held the legal title for the wife during her life, with contingent remainder to such children as might be the offspring of the second marriage, which became a vested remainder on the birth of such child or children.

Equity.    Marriage settlement.    Before Judge PARROTT. Gordon Superior Court.    October Term, 1869.

Ardis, as trustee for Mrs. Skelly and her children, filed a bill containing the following averments : On the 31st of August, 1842, in Edgefield District, South Carolina, he, as such trustee, John C. G. Key and Ann J. Ardis (now Mrs. Skelly) entered into the following contract : " Whereas, a marriage is shortly to be had and solemnized between the said John C. G., and the said Ann J.; and whereas, the said Ann J. is seized and possessed in her own right of certain property hereinafter mentioned, and referring for more particular description thereof to a schedule hereunto annexed and made a part of this deed, which the said parties have agreed to settle and secure as hereinafter provided : Now the said Ann J., for and in consideration of the premises and the sum of five dollars to her in hand paid by the said John Ardis, the receipt whereof is hereby acknowledged, has given, granted, aliened, conveyed, bargained, sold and transferred, and by these presents does give, grant, alien, convey, bargain, sell and transfer, unto the said John Ardis, his heirs and assigns, all and singular the property of the said Ann J., real and personal, more particularly specified and described in the schedule hereunto annexed, and made a part of this deed : To have and to hold the said property to the said John Ardis, his heirs and assigns forever ; *in trust, nevertheless*, to and for the uses and purposes following, that is to say: To and for the joint use and maintenance of the said John C. G. and Ann J., from the time of their marriage, for and during their joint lives, (for which time the said property is to be under the control and management of the said John C. G., but is not to be in any way or manner, or the increase thereof, liable for any of his contracts;) then to the use of the survivor for and during his or her natural life ; and in case of his survivorship, and there being issue, still to be under his control and management during his life ; then to vest in and become the property of the child or the children of the said Ann J., (the issue of said marriage,) living at the time

VOL. XXXIX—42.

of the death of said survivor, and if any such child or children be dead, leaving issue then alive, such issue shall take in place of such deceased child or children; but if there be no issue of said marriage, or if such issue shall die in the lifetime of such survivor, without leaving issue alive at the time of the death of said survivor, said survivor shall take an absolute estate in said property. And if the said Ann J. survive the said John C. G., and marry again, and, at the time of her death, there be issue of the present contemplated marriage, and also issue of any such subsequent marriage then living, the issue of any such marriage shall take an interest in said property in the same manner and to the same extent as if it or they were the issue of the first marriage, and the said John C. G. does hereby release and relinquish to the said John Ardis, for the uses and purposes aforesaid, all his marital rights in and over the said property that might otherwise be acquired by his marriage with the said Ann J., and the said John Ardis covenants and agrees with the said John C. G., and the said Ann J., respectively, to hold the aforesaid property in trust for the uses and purposes before mentioned. *And if at any time hereafter,* it shall be deemed advisable or necessary by said John C. G. and Ann J., or the survivor of them, the said John Ardis, *with the written consent and request of the* said John C. G. and Ann J., or the survivor of them, may sell, exchange, or otherwise dispose of all or any part of said property, but the proceeds of such sale, exchange or other disposition, and the increase thereof, shall be held as such to the uses and purposes before mentioned."

The property mentioned in the schedule was certain lands in South Carolina, and some cash. Key and Ann J. Ardis married and had issue; Key died, leaving Ann J. alive, and the issue died, leaving no issue. In Key's lifetime and since, the South Carolina property was converted into cash and it was invested in slaves and other personalty. In November, 1857, the widow married Thomas W. Skelly, and by him had a son and daughter, now aged ten and seven years, respectively. John Smith was administrator of one Abbott, and as such, in December, 1859, agreed to sell privately to

Ardis, trustee, *vs.* Printup, adm'r, *et al.*

Skelly, certain (described) land of Abbott's estate, at $12,000, said Smith, knowing that Skelly was insolvent, and that he could not pay for it except out of the trust fund aforesaid, which Skelly had.   To perfect the title to this property, it was agreed between Smith and Skelly, that the land should be sold at administrator's sale, and that Skelly would bid it off, but take it at $12,000, without regard to what it might bring at said sale.   It was advertised and sold at public outcry at administrator's sale, and bid off by Skelly, as the highest bidder, at $8,000.   Skelly gave his individual notes to Smith, as administrator, for $12,000, and took bond for title to said premises for himself.   In fact, said land was not worth over $8,000, and Smith knew it, nor is it now worth more. Skelly paid Smith, on these notes, $7,100, Smith knowing that the same was the funds of the said trust estate.   In September, 1864, Skelly died, intestate and insolvent, without having paid the balance of his notes.   Joseph Printup has become Skelly's administrator, and is about to sell said land as the property of Skelly.   Mrs. Skelly and said son and daughter lost the balance of said trust estate, because it had been invested in slaves, and will be penniless unless they can recover said land or the trust money invested in it.

Ardis contended that the $8,000 was all that was legally due for said land, and prayed that Printup should deliver the bond, and that Smith should convey the land to him, as such trustee, for said uses and trusts, and surrender the balance of Skelly's notes, or that a decree be had rendering said land liable for said trust fund so paid out by Skelly, in preference to all other liens, and for general relief, and that meanwhile Printup should not sell said land.

The injunction was granted.   When the cause came on for trial defendant's counsel moved to dismiss the bill, because the trust created by said deed was executed, and therefore complainant had no right to sue.   The bill was dismissed, and that is assigned as error.

W. H. Dabney, W. Akin, for plaintiff in error.

PRINTUP & FOUCHE, H. BUCHANAN, for defendants, said Key dying without issue, the widow, under the deed, took the fee, Irw's Code, secs. 2288, 2290, 2237; 1st Kelly, (Ga. R.,) 389; 2 Bl. Com., 175–6; the life-estate was merged, Irw's Code, sec. 2245; 2 Bl. Com. 177; at least, the widow had a life-estate, and Skelly got that by marrying her, and a sale of Skelly's interest in said land cannot affect remaindemen, Irw's Code, secs. 2229, 2236.

BROWN, C. J.

1. Ante-nuptial contracts, like wills, are to receive a liberal construction when necessary to carry into effect the intention of the parties. Code, section 1767; 3 *Kelly*, 367.

2. The Courts will disregard the rules of grammatical construction, and will substitute conjunctions for each other, when necessary to effectuate the intention of the parties to the contract. Code, section 2715.

3. When an express trust depends for its operation upon a future event it is a contingent trust. Code, section 2285.

4. Apply these rules in the construction of this contract, and we think there is no difficulty in arriving at a correct conclusion. It is insisted that the property vested absolutely in Mrs. Key, at the death of her first husband, without living issue, and the following sentence in the deed is relied upon to sustain this view of the case: "But if there be no issue of said marriage, or if such issue shall die in the life time of such survivor, without leaving issue alive at the time of the death of the said survivor, said survivor shall take an absolute estate in said property." Stop here, and there would be no difficulty. But the deed proceeds: "And if the said Ann J. survive the said John C. G., and marry again, and, at the time of her death, there be issue of the present contemplated marriage, *and also* of any such subsequent marriage then living, the issue of any such marriage shall take an interest in said property in the same manner, and to the same extent, as if it or they were the issue of the present marriage." We think it very clear that it was the object of

Miss Ardis and her friends, in making this marriage contract, to secure to all her children equal rights under the trust deed. No matter whether they were the children of a first or second marriage, or both, they should all stand alike and take equally. But we are met with the objection that four contingencies must happen before the children of the second marriage can take : first, she must have survived her husband ; second, she must have had children living at the time of his death; third, she must have married again; and fourth, she must have had children by the second marriage. We are satisfied this was not the intention of the parties when the deed was made, though the grammatical construction of the sentence justifies this conclusion. There being no children of the first marriage, if we substitute the word *or* for the words *and also*, italicised above, all difficulty is removed, and the intention of the parties, as we gather it from the whole instrument, is carried into effect in favor of the children of the second marriage.

It was further objected, that this construction can not be correct, as it vests the estate in the hands of the trustee at the death of the first husband, for the use of his widow for life ; and it was asked what became of the fee, and whether the estate must have escheated, in case she died before the second marriage and the birth of a child. We see no difficulty here. When Mr. Key died the trustee still held the legal title for the use of Mrs. Key for life, with contingent remainder to any issue she might have by a second marriage. Whenever such issue were born, the remainder became vested, and the trustee then held for her during her life, with remainder to her children in life. Upon the death of Key the trust depended for its full operation upon a future event, the birth of a child or children by a future husband. It was, therefore, a contingent trust, subject to be terminated at her death without such issue, or to be executed in their favor in case of the birth of such issue.

This was not only a proceeding upon a marriage contract, which is a contract favored by law, but it was a proceeding in equity, on such contract, and the rule is, that Courts of

Equity, especially, will effectuate the true intent and meaning of the parties to the settlement, *irrespective of the words used by them*, in attempting to carry the agreement into effect. 34 *Ga.*, 581; 2 *Kelly*, 319.

We hold that the trust in this case was not executed, there was still something for the trustee to do. He still held the legal title for the use of the wife during her life, subject to the contingent remainders which have vested.

We are the more confident of the correctness of this view when we consider the situation of the parties and the objects intended to be accomplished. The property belonged to Miss Ardis. Under the laws, then in existence at the place of the execution of the deed, if there were no marriage contract, the property would have vested absolutely in the husband so soon as the marriage was solemnized. She and her friends were unwilling to permit it so to pass, and the marriage settlement was agreed upon. The parties were to have the joint use of the property during their joint lives, the husband managing it. And in consideration of the relinquishment of his marital rights, it was agreed that he should take it absolutely as his own, in case he survived his wife, and she left no issue of the marriage; and in case they had children, and he died, she was to have it for life, and it was to go to their children at her death. This fully provided for the husband and his children. But, as the wife was the owner of the property she required still further provision made on her side. She contemplated the happening of the contingency that has happened, the death of her first husband, and her second marriage, and the birth of children as the offspring of that marriage, and she desired to make provision by the *trust deed* for them. To this the husband consented, and agreed that such children of the second marriage should take equally with any children he might leave as the offspring of the marriage then in contemplation. As all would have the same mother, and the property came by her, this was just and reasonable.

It is true it was contemplated that there would be children of the first as well as of the second marriage. But it seems

to us it could not have been the intention of the parties to deny to the children of the second marriage, under the trust deed, any benefit, because there were none by the first marriage. It was certainly intended to provide *by this deed* for children of the second marriage, and that they should, if born, take an interest under it. If we adopt the construction contended for, that object is defeated, and the property passes out of the hands of the trustee, and out of the hands of Miss Ardis, now Mrs. Skelly, during her lifetime, and leaves her destitute, and her children by the second marriage are deprived of any benefit under the deed, or any interest in the property. Such a construction sticks in the bark, and defeats the very objects of the deed.

Judgment reversed.