## SIMS *v.* BOLTON.

1. A bank check tendered in payment is not such until paid.

(*a*) A certain mule was sold at a given price for cash, and a bill of sale executed thereto and delivered to the purchaser, warranting its soundness. In payment for the mule a check on a bank was delivered to the vendor for the amount of the purchase-price. The vendee on the same day of the trade attempted to work the mule, and found it to be diseased, and immediately notified the bank on which the check was drawn not to pay it when presented, and payment was accordingly refused. The vendee by letter to the vendor, who lived in a different town, offered to turn the mule back to the vendor, but, failing to hear from him, traded it. The vendor demanded possession of the mule from the vendee soon after it had been traded by him. The unpaid check was not formally tendered to the drawee before suit, but was produced on the trial of the case and offered in evidence. On the failure of the vendee to deliver the mule the vendor brought an action of trover for its recovery and hire. *Held*, that, the transaction of purchase and sale being a cash one, the title to the mule did not pass from the vendor to the vendee on the failure of the bank to cash the check.

(*b*) An offer of a vendee, in a letter sent by mail, to tender back personal property to a vendor living in a different town, which letter was never received by the vendor, was not a lawful and valid tender.

(*c*) Under the evidence in this case, the failure of the court to charge the jury that before the plaintiff could recover he would 'have to tender

to the defendants the check that he received for the mule, before a conversion would be proved, was not error.

2. In an action for the recovery of personal property, where the plaintiff elected to take a money verdict, and the only evidence as to the value of the property related to the time of the conversion, and no evidence as to the value at other times was introduced, it will not require a new trial that the presiding judge charged: "If you find for the plaintiff, gentlemen of the jury, you would be authorized to find the amount of the proved value of this property. If you find for the plaintiff, you can find the highest or lowest amount, that is a matter for you to say, with interest from the date of the conversion or the date when the defendants took possession of this property."

APRIL 11, 1912.

Trover. Before Judge Bell. Fulton superior court. March 20, 1911.

*Walter A. Sims,* for plaintiff in error.

*J. E. & L. F. McClelland,* contra.

HILL, J. On March 14, 1910, W. I. Bolton sold to John N. Sims & Sons one mule of the alleged value of sixty dollars, and executed a bill of sale thereto. A check for $60, drawn by Sims & Sons on the American National Bank of Atlanta, was given to Bolton in payment for the mule. The bill of sale guaranteed the mule "to be sound and in good condition." On the delivery of the mule to Sims & Sons the check for the purchase-price was turned over to Bolton. This check was deposited by him, a few days later, with the Norcross Bank, and later he was informed by the cashier of that bank that the check had been "turned down." The check had the words "Payment stopped by drawer" stamped across the face of it, and was produced on the trial of the case. Receiving no word or information directly from Sims & Sons, Bolton sought of them the reason why the check had not been paid. They admitted that they had stopped payment of the check because "the mule was no account." It was averred, in their answer to a suit in trover, that the mule was not sound as represented by the plaintiff, but that it was what is commonly known as a "kidney dropper" or "choker," and that it was "of no market value, was absolutely worthless, and not able to do a day's work, and worth nothing for hire." The evidence showed, that soon after the trade the mule was hitched to a dray and an attempt made to work it; that after the mule had pulled for a short distance, about a hundred yards or less, it fell in the road and had to be helped up; that the mule was driven a short distance further, when it fell again to the ground, trembling,

breathing hard, and could not get up, nor perform labor, etc.; and that as soon as defendants discovered the condition of the mule they telephoned the bank and stopped the payment of the check; that they wrote to Bolton, telling him to come and get the mule, or he would be sold for his feed, but Bolton denied getting the letter; that defendants kept the mule for a week or ten days, and, as the plaintiff did not call for it, they traded it. The day after the mule was traded, Bolton called and demanded it, but did not offer to surrender the check. He was informed that the mule had been traded. Whereupon he brought an action of bail-trover to recover the mule, alleging its value at $60; and on the trial he elected to take a money verdict. The jury found a verdict for the plaintiff for $63.50. A motion for new trial was made by the defendants, which was overruled, and they excepted.

1. The question raised by the record is, did the title to the mule pass from Bolton to Sims & Sons on its delivery to them and on the acceptance of their check therefor by Bolton. Under the evidence this was a cash transaction. There is no hint or suggestion that credit was to be extended. The mule was sold and the check was given in payment. Was this a cash payment? The check seems to have been treated as cash, but not accepted as such in terms; and before it was presented to the bank on which it was drawn, the drawers ordered its payment stopped. This being a cash transaction, and the check given for the purchase-price of the mule not being paid by reason of the instructions of the drawers of the check to the bank, the title to the mule remained in the vendor, and never passed to the vendees. Merely giving the check was not a payment in cash, and there is no evidence that it was to be accepted by the vendor as cash; and therefore it can not be so considered until paid. Civil Code (1910), § 4314. This is a contest between the vendor and vendees. No third person is involved in the transaction. The offer of the vendees by letter to tender the mule back to the vendor, even if the letter was received by him (and no evidence of this appears), was not a good tender. Nor was the mere possession of the unpaid check such an acceptance by the vendor as amounted to a cash transaction, in the absence of an express agreement that it should be treated and accepted as cash. The trade being a cash transaction, and no cash being paid for the mule, by reason of the express direction and action of the

defendants themselves in stopping payment of the check, the title to the mule did not pass from the vendor to the vendees. The check with the entries thereon was produced and offered in evidence at the trial of the case; and the jury was authorized, under the evidence and the charge of the court, to find a verdict in favor of the plaintiff for the proved value of the mule at the time of the conversion, with interest from that date. The production of the protested check at the trial, with the entries thereon, showed that a formal tender was unnecessary; and the failure of the court to charge on the subject of tender of the check was not error.

2. Error is assigned on the following charge of the court to the jury: "If you find for the plaintiff, you can find the highest or lowest amount, that is a matter for you to say, with interest from the date of the conversion, or the date when the defendants took possession of the property." The plaintiff elected to take a money verdict. This charge of the court was not harmful under the facts of this case. The judge was instructing the jury as to the value of the mule on the date of the conversion; on the highest and lowest estimate of the value on that date, and not on the highest and lowest value on different dates between the conversion and the time of trial. The question being tried was the value of the mule on the date of conversion. And on this question the judge was instructing the jury that they were not bound by the estimate of any one witness; but that they might take the highest or lowest estimate of value, with interest from the date of conversion. There is no evidence of any higher or lower value at any other date than on the date of conversion. If the plaintiff had elected to take the highest proved value of the property at any time between the dates of the conversion and of the trial, and offered proof of its value from the date of conversion to the time of trial, he would not be entitled to interest or hire. See *Jaques* v. *Stewart,* 81 *Ga.* 83 (2) (6 S. E. 815). But such is not the present case. There was no highest and lowest value proved in this case, subsequently to the date of the conversion. Had there been, the charge of the court might have been confusing to the jury and erroneous. But there is no evidence showing any higher or lower value subsequently to the date of conversion, to which the charge might apply. We do not see, therefore, how the charge was harmful to the defendant. The court was charging the jury as to the value of the mule on the day

of the conversion,—the highest or lowest estimate of value on that date, and not on different dates. The jury was not bound by the estimate of any one witness. They could take the highest estimate or the lowest, and find that as the value of the property, with interest from the date of the conversion. The real question therefore is, what was the value of the mule on the day of conversion? In arriving at the true value the jury could accept the highest or lowest estimate of value on that date. Construing the charge of the court in the light of the evidence, and in accordance with the ruling here made, we do not think that the charge of the court could have injured the defendants.

*Judgment affirmed. All the Justices concur.*