## A08A2340. AZZOUZ et al. v. PRIME PEDIATRICS, P.C.

(675 SE2d 314)

ADAMS, Judge.

Rami Azzouz, M.D., a pediatrician, entered into an employment contract with Prime Pediatrics, P.C., that prohibited him from practicing pediatric medicine in a five-county area for two years should his employment terminate for any reason. After Azzouz announced that he intended to quit and start his own practice in the prohibited area, Prime brought suit against Azzouz and his new firm and sought an interlocutory injunction, which the trial court granted. This appeal ensued.

The undisputed facts show that Prime provides general and specialized pediatric care to patients in Dalton, Georgia and the surrounding area. Azzouz entered into the employment contract with Prime on January 27, 2004, and although the contract has since been modified, the relevant terms are unchanged. Generally speaking, the agreement bars Azzouz from working as a pediatrician within the five-county region surrounding Dalton, Georgia, namely Whitfield, Murray, Gordon, Catoosa and Walker counties. Around April 24, 2008, while still employed at Prime, Azzouz formed Bright Pediatrics, P.C., with its principal place of business in Dalton, Whitfield County. On June 12, 2008, Azzouz informed Prime that he planned to leave and open a pediatric practice in Whitfield County. He also announced his intention to maintain privileges to practice pediatric medicine at a hospital in Chattanooga, Tennessee. Azzouz's employment with Prime ended, and when he left, Azzouz took a record of all the patients whom he had cared for during his tenure with Prime. Prime brought suit against Azzouz and Bright alleging breach of the employment agreement.

Prime sought an interlocutory injunction to preserve the status quo while the case was pending. And on July 8, 2008, following an evidentiary hearing, the trial court held that the noncompete provision was reasonable and entered an interlocutory injunction against Azzouz and Bright. The court modified its order twice to add findings of fact. The trial court applied strict scrutiny to the employment agreement and determined that the noncompete provision was reasonable because it falls within the range of time, geographic territory and scope limitations that have been deemed reasonable in prior case law.

The decision to grant an interlocutory injunction rests in the sound discretion of the trial court. *MARTA v. Wallace*, 243 Ga. 491, 494 (3) (254 SE2d 822) (1979). Interlocutory injunctions are granted to preserve the status quo and balance the conveniences of the parties while the final adjudication of the case is pending. Id. A trial court's discretion in granting or denying an injunction will not be

disturbed on appeal as an abuse of discretion unless there was either no evidence upon which to base the ruling or it was based on an erroneous interpretation of the law. *Atlanta Area Broadcasting v. James Brown Enterprises*, 263 Ga. App. 388, 393 (587 SE2d 853) (2003).

1. A restrictive covenant within an employment contract will be upheld if the restraint on trade is not unreasonable, it is founded on valuable consideration, it is necessary to protect the interests of the party who is seeking to impose it, and it does not unduly prejudice the interest of the public. *McAlpin v. Coweta Fayette Surgical Assoc.*, 217 Ga. App. 669, 671 (1) (458 SE2d 499) (1995).

(a) Azzouz's main argument is that the trial court erred by granting the interlocutory injunction because the contract is ambiguous and, as a consequence, overly broad and not enforceable with regard to the hospitals with which he is prohibited from associating during the two-year period.

Section 13 of Azzouz's employment contract, entitled "Non-Competition Agreement," is the only relevant section of the agreement. The first paragraph of the section clearly bars Azzouz from practicing pediatric medicine or a pediatric subspecialty within a five-county area for two years after termination of employment:

NON-COMPETITION AGREEMENT. Employee hereby covenants and agrees with Employer that during his employment pursuant to the terms of this Agreement and for a period of two (2) years following the termination of his employment for any reason, the Employee shall not practice pediatric medicine or any pediatric sub-specialty within the following counties located in the State of Georgia: Whitfield, Murray, Gordon, Catoosa, and Walker except as an Employee of the Employer pursuant to the terms of this Employment Agreement.

The paragraph then adds limitations to the construction of the agreement:

Nothing contained herein however shall be construed so as to prohibit the Employee from practicing medicine as a pediatrician outside the territory set forth above before the expiration of said two (2) years, or within the territory as described above after the expiration of two (2) years, nor from prohibiting the Employee from practicing specifically any specialty of medicine other than pediatrics. . . .

The second paragraph sets out additional terms of the non-

competition agreement:

> The parties agree that prohibited competition shall include maintaining pediatric privileges at any hospital located in the prohibited area, advertising in any form, including but not limited to, telephone, white and yellow pages, radio, newspaper advertisements, signage advertising, keeping or maintaining an office within the prohibited geographical area, posting web-sites showing business locations in the prohibited geographical area, or mailings to patients of Employer within the prohibited geographical area.

Finally, Azzouz agreed that the geographic and time limitations in the contract were reasonable:

> Additionally the parties agree that the prohibited areas are reasonable considering that said areas are in the Employer's trade area to which the Employer has introduced the Employee. Employer and Employee also agree that in consideration of the cumulative time of employment of Employee by Employer the time limitation set forth herein is reasonable.

Azzouz and Bright contend the language of the contract is at best ambiguous and at worst overly broad because it can be read to mean either (1) the defendant is only barred from working as a pediatrician and advertising his services within the five-county area, or (2) the defendant is *also* barred from working in any hospital that advertises within the five-county area. Under the latter interpretation, Azzouz contends the agreement's territorial restriction would be overly broad.

When a contract is at issue, the court first determines whether the language of the agreement is ambiguous. *Michna v. Blue Cross and Blue Shield of Ga.*, 288 Ga. App. 112, 113 (653 SE2d 377) (2007). The language is ambiguous if it is susceptible to more than one meaning. Id. at 114. If the language is clear and unambiguous, contract construction is not necessary, and the agreement will be enforced according to its clear and unambiguous terms. *Homer v. Bd. of Regents &c.*, 272 Ga. App. 683, 685-686 (613 SE2d 205) (2005); *Michna*, 288 Ga. App. at 113. If there is ambiguity, the court will apply the rules of contract construction in an attempt to resolve it. *Michna*, 288 Ga. App. at 113. If application of those rules does not resolve the ambiguity, the contract's meaning and the contracting parties' intentions are questions left to the trier of fact. Id.

The trial court held that in light of the plain meaning of the words and given the clause providing that "[n]othing contained

herein however shall be construed so as to prohibit the Employee from practicing medicine as a pediatrician outside the territory . . . ," the agreement is not ambiguous. We agree. With regard to hospitals with which Azzouz is allowed to associate, the second paragraph plainly states that he may not maintain privileges at a hospital in the prohibited area, which directly implies that he may maintain privileges with hospitals outside the area. This construction is underscored by the express limitation of the agreement quoted above.

With unusual candor, Azzouz and Bright admit that they "favor a construction that expands the limitations of the agreement if such construction would render the agreement unenforceable." But, "a contract should be given a reasonable construction that will uphold the agreement rather than a construction that will render the agreement meaningless and ineffective. [Cit.]" *McLendon v. Priest*, 259 Ga. 59, 60 (376 SE2d 679) (1989). We find nothing in the agreement to suggest that Azzouz is prohibited from working at a hospital outside the prohibited area if that hospital advertises within that area. There is no ambiguity in the agreement with regard to the hospitals with which Azzouz is not allowed to maintain privileges.

(b) Azzouz contends that even under this interpretation, the territorial restriction on his own advertising is overly broad because it is unlimited in geographic area. Azzouz argues that although the second paragraph of the noncompete agreement limits certain of his activities to "the prohibited geographic area," it limits his ability to advertise anywhere, which would be an overly broad limitation. We disagree. The second paragraph is not constructed perfectly, and it could have used some semicolons. Nevertheless, OCGA § 13-2-2 (6) provides that with regard to the interpretation of contracts, grammatical problems may be disregarded:

> The rules of grammatical construction usually govern, but to effectuate the intention they may be disregarded; sentences and words may be transposed, and conjunctions substituted for each other.

Here, as the trial court held, in addition to the limitation regarding hospitals, the second paragraph prohibits three forms of advertising within the prohibited area as shown by the following marked-up version of the second paragraph.

> The parties agree that prohibited competition shall include . . . , advertising in any form, including but not limited to[: (1)] telephone, white and yellow pages, radio, newspaper advertisements, signage advertising, keeping or maintaining an office within the prohibited geographical area[;

(2)] posting web sites showing business locations in the prohibited geographical area[;] or [(3)] mailings to patients of Employer within the prohibited geographical area.

Thus, all prohibited activities are limited to the prohibited area. In addition, the plain intent of the parties, considering the entire agreement, is to limit all of the activities only within the defined prohibited geographical area. The addition of the semicolons as shown resolves any possible ambiguity. See *McVay v. Anderson*, 221 Ga. 381, 385 (144 SE2d 741) (1965) ("The cardinal rule of construction is the ascertainment and effectuation of the intent and this must be done even if it requires transposing words and sentences to the point of ignoring minor clauses."); *Ardis v. Printup*, 39 Ga. 648, 653 (1869) ("[I]f we substitute the word *or* for the words *and also*, . . . all difficulty is removed, and the intention of the parties, as we gather it from the whole instrument, is carried into effect.").

(c) Azzouz contends the scope of the restrictions is unreasonably broad in that he cannot be prohibited from certain forms of advertising in the prohibited area, namely mailings to Prime's patients within the prohibited area or listing his name in the white pages or on the internet.

A noncompete provision must balance "the employee's right to earn a living and his ability to determine with certainty the prohibited territory" with "the employer's interest in customer relationships created or furthered by its former employee on its behalf and its right to protect itself from the former employee's possible unfair appropriation of contacts developed while working for the employer." *Sysco Food Svcs. &c. v. Chupp*, 225 Ga. App. 584, 586 (1) (484 SE2d 323) (1997). With regard to the restriction on mailings to all of Prime's patients, there is an interplay between the scope of the prohibited behavior and the territorial restriction:

> if the scope of prohibited behavior is narrow enough (e.g., contacting those with whom the employee dealt while working for the employer), the covenant may be reasonable even if it has no territorial limitation or has a territorial limitation which is very broad. But if the scope of the prohibition is broader, the territorial limitation must be specified and closely tied to the area in which the employee actually worked.

*Chaichimansour v. Pets Are People Too*, 226 Ga. App. 69, 71 (1) (485 SE2d 248) (1997). Here, because we have no transcript of the hearing, we assume that the trial court's factual conclusions are supported by the record. *Tavakolian v. Scott*, 282 Ga. 578, 579 (652

YALE LAW LIBRARY

SE2d 542) (2007). The court found that Azzouz indicated that he intended to *continue* practicing in all five counties, which implies that he had practiced in all five on behalf of Prime. Accordingly, the prohibition on mailings to Prime's customers is not unreasonable. *Chaichimansour*, 226 Ga. App. at 71 (1). Cf. *Nunn v. Orkin Exterminating Co.*, 256 Ga. 558, 559 (1) (a) (350 SE2d 425) (1986) (where prohibition against soliciting any customer was limited to the employee's former territory, the limitation was reasonable).

Azzouz's argument about the white pages and the internet is also without merit. The second paragraph of the noncompetition section provides that advertising related to the "prohibited competition" is barred. The first paragraph explains that the prohibited competition refers to practicing pediatric medicine or any pediatric subspecialty in the prohibited area for the prohibited time. Thus, the limitation on advertising means that Azzouz is prohibited for two years from advertising in the white pages that he is practicing pediatric medicine or a subspecialty in the prohibited area. This provision's scope is a reasonable restriction related to the "prohibited competition" under the agreement.

And, finally, reviewing the agreement as a whole, we find that this noncompete provision is similar to the one upheld in *Raiford v. Kramer*, 231 Ga. 757, 758 (204 SE2d 171) (1974). Here, as in that case, both provisions were for two-year durations, both provisions applied to five-county geographic territories where the employer's practice was located and from which it drew patients, and both provisions were limited to the specialty that the doctor practiced during his employment. Id.

2. Azzouz contends the court erred by finding that the parties had equal bargaining power as a matter of fact. In its findings of fact, the court found no disparity in bargaining power between the parties. But we have no transcript in the record of the hearing on the interlocutory injunction from which to review the findings of fact. Second, the factual point goes to the proper level of scrutiny to be applied when assessing the reasonableness of a restrictive covenant, and the court applied the highest level of strict scrutiny. See, e.g., *McAlpin*, 217 Ga. App. at 672 (2). We find no reversible error.

3. Azzouz contends the trial court should have considered the intent of the parties to the contract as found in documents written years after the agreement and that, therefore, the court applied "grammatical construction to thwart the intentions of the parties." But "[w]here the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties. [Cits.]" *Health Svc. Centers v. Boddy*, 257 Ga. 378, 380 (2) (359 SE2d 659) (1987). Azzouz misreads OCGA § 13-2-2 (6), which is set forth above. Subsection (1) of that Code section provides

that "[p]arol evidence is inadmissible to add to, take from, or vary a written contract." And subsection (6) simply allows the court to disregard rules of grammatical construction, such as those regarding punctuation and word and sentence order, where they thwart the intent of the parties as shown in the agreement itself; it is not a back door for the admission of parol evidence. See generally *McVay*, 221 Ga. at 385; *Bridges v. Home Guano Co.*, 33 Ga. App. 306, 310-311 (125 SE 872) (1924).

4. Azzouz's argument that the trial court erred by blue-penciling the agreement is not supported by the record. The court's order shows that the court simply found that the agreement was not ambiguous and it construed the agreement accordingly.

5. Azzouz's argument that the trial court erred by not construing the agreement against the drafter, Prime, is without merit. OCGA § 13-2-2 (5) provides only that "[i]f the construction is doubtful, that which goes most strongly against the party executing the instrument or undertaking the obligation is generally to be preferred." Here, the construction is not doubtful. The same is true of the rule requiring construction in favor of the insured. See *Michna*, 288 Ga. App. at 114 ("[E]ven though ambiguous exclusions may be construed liberally in favor of the insured and strictly construed against the insurer, this cannot be done when the exclusion is clear and unequivocal.").

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED MARCH 12, 2009.

*Minor, Bell & Neal, James H. Bisson III, Stephen B. Farrow*, for appellants.

*Coppedge & Leman, Warren N. Coppedge, Jr., Joseph B. Evans*, for appellee.