## A10A1350. SOUTH POINT RETAIL PARTNERS, LLC v. NORTH AMERICAN PROPERTIES ATLANTA, LTD.
### (696 SE2d 136)

ELLINGTON, Judge.

This dispute arises from an agreement between South Point Retail Partners, LLC, and North American Properties Atlanta, Ltd. ("NAP"). NAP filed a claim with the American Arbitration Association, alleging that South Point breached the agreement by failing to make certain payments when due. South Point then filed this action in the Superior Court of Fulton County, seeking a judgment declaring that the arbitration clause in the parties' agreement does not encompass NAP's claim and seeking to enjoin the arbitration pending adjudication of South Point's declaratory judgment action. The

trial court denied South Point's motion for an injunction and granted NAP's motion to dismiss South Point's declaratory judgment action for failure to state a claim upon which relief can be granted. South Point appeals, contending that the trial court misconstrued the arbitration clause in the parties' agreement and, consequently, erred in granting NAP's motion to dismiss. For the reasons explained below, we reverse.

"We review de novo the trial court's grant of a motion to dismiss. A motion to dismiss may be granted only where a plaintiff would not be entitled to relief under any set of facts that could be proven in support of the plaintiff's claim." (Citations and punctuation omitted.) *Johnson v. Bd. of Commrs. &c.*, 302 Ga. App. 266 (690 SE2d 912) (2010).

For the purpose of evaluating NAP's motion to dismiss, we assume that South Point can prove the following facts as averred in its complaint. See *Johnson v. Bd. of Commrs. &c.*, 302 Ga. App. at 266. In 2005, investors organized South Point to develop a shopping center in McDonough. South Point and NAP entered a "pre-development" agreement under which NAP provided certain services to South Point, including applying for rezoning and negotiating with certain anchor retailers.

In September 2006, the parties entered into a new agreement under which South Point retained NAP to provide consulting and marketing services to South Point in connection with the shopping center. In Paragraph 1, the parties specified the hourly rate for NAP's consulting services and the commission that South Point would pay NAP for procuring a buyer or lessee for any outparcel.

In the consulting and marketing agreement, South Point and NAP also expressly terminated the pre-development agreement. In Paragraph 3, the parties agreed that South Point would "reimburse [NAP] the NAP Pre-Development Costs as defined in the Pre-Development Agreement." NAP acknowledged that it had already received "$442,240.00 or thirty percent of the NAP Pre-Development costs." South Point agreed to pay NAP "$1,031,089.00, or the remaining seventy percent of the NAP Pre-Development Costs" in installments, "if, as and when" South Point received installment payments from the anchor retailers.

Paragraph 5 (a) of the consulting and marketing agreement set out the conditions and process for early termination of the agreement. Paragraph 5 (b) provided as follows:

In the event of early termination of this Agreement as provided for herein, NAP shall be entitled to a pro-rata portion of Sales and Leasing Fees for space leased or committed to . . . as of such termination. In the event the

parties involved are unable to agree on the total compensation owed to NAP, the matter shall be submitted to binding arbitration in accordance with the rules of the American Arbitration Association[.] ... If this Agreement is terminated by Owner prior to the repayment outlined in Paragraph 3 above (except for cause) then Owner shall deliver payment of *all* funds due to NAP under Paragraph 3 notwithstanding the early termination to NAP, within 10 days of delivery of the notice of early termination.

In the claim NAP filed with the American Arbitration Association, NAP alleged that South Point breached Paragraph 3 of the consulting and marketing agreement by paying only $106,441.35 of the total it owed NAP for its pre-development costs and failing to pay the remaining $924,647.65 due. The trial court determined that the parties had agreed "to arbitrate all disputes between them as to the 'total compensation' owed to [NAP], and that the claims raised in [NAP's] Demand for Arbitration clearly fall within that arbitration clause." Based on that construction of the agreement, the trial court denied South Point's motion for an interlocutory injunction and dismissed South Point's complaint with prejudice for failure to state a claim upon which relief can be granted.

1. South Point contends that the trial court erred in determining as a matter of law that the arbitration clause applies to NAP's claim and, therefore, erred in granting NAP's motion to dismiss.

Under Georgia law,

> arbitration is a matter of contract[,] and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Therefore, the question of arbitrability, i.e., whether an agreement creates a duty for the parties to arbitrate the particular grievance, is undeniably an issue for judicial determination.

(Citation and punctuation omitted.) *Yates v. CACV of Colorado*, 303 Ga. App. 425, 430 (1) (693 SE2d 629) (2010). The construction of an arbitration clause in a contract is subject to the ordinary rules of contract construction. *Tillman Park v. Dabbs-Williams Gen. Contractors*, 298 Ga. App. 27, 29 (679 SE2d 67) (2009). "The cardinal rule of contract construction is to ascertain the intention of the parties. Contract construction is a three-step process. Initially, the construction of the contract is a question of law for the court." (Punctuation and footnote omitted.) Id. First, the court determines whether the contract is ambiguous. Id.; *Azzouz v. Prime Pediatrics*, 296 Ga. App. 602, 604 (1) (a) (675 SE2d 314) (2009). A contract is

ambiguous when the language used may be fairly understood in more ways than one. *Azzouz v. Prime Pediatrics*, 296 Ga. App. at 604 (1) (a); *Western Pacific Mut. Ins. Co. v. Davies*, 267 Ga. App. 675, 680 (1) (601 SE2d 363) (2004). If the language of a contract is plain, unambiguous, and capable of only one reasonable interpretation, no construction is required or even permissible, and the trial court enforces the contract according to its literal meaning. *Tillman Park v. Dabbs-Williams Gen. Contractors*, 298 Ga. App. at 29; *Quality Foods v. Smithberg*, 288 Ga. App. 47, 51 (1) (653 SE2d 486) (2007).

Second, if the trial court determines that the contract is ambiguous,

> the trial court then applies the applicable rules of contract construction in OCGA § 13-2-2. . . . In construing a contract, courts must give words their usual and common meaning. And the entirety of the agreement should be looked to in arriving at the construction of any part. The contract is to be considered as a whole, and each provision is to be given effect and interpreted so as to harmonize with the others.

(Punctuation and footnote omitted.) *Quality Foods v. Smithberg*, 288 Ga. App. at 53 (3) (a).

Third, if an ambiguity in the contract cannot be negated by the court's application of the statutory rules of construction, a question of fact remains for the jury, which may consider parol evidence. *Tillman Park v. Dabbs-Williams Gen. Contractors*, 298 Ga. App. at 29; *Sharple v. AirTouch Cellular of Ga.*, 250 Ga. App. 216, 218 (551 SE2d 87) (2001).

South Point contends that "the total compensation owed to NAP" includes only compensation NAP earned after the execution of the consulting and marketing agreement, that is, consulting fees and sales and marketing commissions. NAP contends, on the other hand, that the concept of "compensation" can include "reimbursement," and that, as used in Paragraph 5 (b) of the consulting and marketing agreement, the phrase "the total compensation owed to NAP" includes reimbursement for pre-development costs provided in Paragraph 3. Because neither of these interpretations is inherently unreasonable, we conclude that the phrase "the total compensation owed to NAP" is susceptible of more than one meaning and, therefore, that the arbitration clause is ambiguous. Consequently, we apply the statutory rules of contract construction to determine the parties' intention.

Read as a whole, the consulting and marketing agreement shows that its primary purpose was to establish the rate of compensation

NAP would earn for providing consulting and marketing services on a going-forward basis. A secondary purpose was to stipulate the amount of South Point's remaining debt for NAP's pre-development costs and to provide for the manner and timing of South Point's payment of that debt. It is evident from the language used in Paragraph 3 of the agreement that the parties viewed the amount of that debt to be settled and undisputed, not as something as to which they might later be "unable to agree." When we consider the contract in its entirety and interpret Paragraph 5 (b) so as to harmonize with the remaining provisions, we conclude that the phrase "the total compensation owed to NAP" in the second sentence of Paragraph 5 (b) referred to "the pro-rata portion of Sales and Leasing Fees for space leased or committed to . . . as of such [early] termination" addressed in the preceding sentence. It follows that South Point's debt for NAP's pre-development costs was not included in the scope of potential disputes that the parties agreed to submit to arbitration.[1] *Krut v. Whitecap Housing Group*, 268 Ga. App. 436, 442 (2) (c) (602 SE2d 201) (2004); *Pope v. Continental Augusta Woodlands*, 169 Ga. App. 874, 875 (315 SE2d 307) (1984). Accordingly, the trial court erred in granting NAP's motion to dismiss.

2. In light of our holding in Division 1, supra, South Point's remaining argument is moot.

3. In light of our holding in Division 1, supra, NAP's request, in its brief, for a frivolous appeal penalty is denied.

*Judgment reversed. Andrews, P. J., and Doyle, J., concur.*

DECIDED JUNE 11, 2010.

*Chamberlain, Hrdlicka, White, Williams & Martin, James L. Paul*, for appellant.

*Arnall, Golden & Gregory, Edward A. Marshall, Heather S. Michael*, for appellee.

---

[1] See *Kemiron Atlantic v. Aguakem Intl.*, 290 F3d 1287, 1290 (II) (A) (11th Cir. 2002) ("[T]he intent of the contracting parties is paramount and can trump the [Federal Arbitration Act]'s policy in favor of arbitration.") (citations omitted).