**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**BRANCH and MERCIER, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

June 10, 2016

# In the Court of Appeals of Georgia

A16A0647. CARLISLE v. BROE.

MERCIER, Judge.

John Carlisle appeals the trial court's grant of summary judgment in favor of Mark Broe and its denial of Carlisle's motion for summary judgment, based on its finding that Carlisle is liable for wrongful eviction and trespass. We agree, and vacate.

"A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." *Matjoulis v. Integon General Ins. Corp.*, 226 Ga. App. 459, 459 (1) (486 SE2d 684) (1997) (citation omitted). Further, "summary judgment is appropriate when the moving party can show that there is no genuine issue of material fact and that the movant is entitled to

judgment as a matter of law." *Albertson v. City of Jesup*, 312 Ga. App. 246, 248 (718 SE2d 4) (2011) (footnote and punctuation omitted).

Viewed in this light, the evidence shows that this case arises out of a dispute over a commercial lease agreement (the "Lease") entered into in September 2011. Under the Lease, premises located in Griffin, Georgia (the "Premises") were leased to The Crafty Yank, Inc. (the "Tenant") by Carlisle. Broe, The Crafty Yank's CEO, personally guaranteed the Tenant's performance of the Lease. Carlisle claims the Tenant began violating the Lease in numerous ways shortly after the business began operation under the Lease. Carlisle alleges the Tenant violated state and local laws, as well as permitted customers to vandalize the Premises, interfered with other tenants' use and enjoyment of the Premises, and failed to pay for work performed on the Premises that resulted in a lien being filed on the title of the Premises.

On January 5, 2013, Carlisle took possession and control of the Premises and secured all the personal property within. In an email to the Tenant, Carlisle claimed he was seizing the Premises due to Tenant's violations of paragraphs 18 and 19 of the Lease. Carlisle contended that paragraph 27 of the Lease authorized him to reenter and take possession of the Premises, and Paragraph 24 authorized him to secure all personal property on the premises. He gave the Tenant five days to become compliant

2

with the Lease or the Lease would be terminated. Broe, who acted as the agent for the Tenant, sent Carlisle correspondence on January 10, 2013, through his attorney, indicating the Tenant's desire to terminate the Lease.

On February 8, 2013, Carlisle brought the underlying action against Broe, as guarantor, seeking payment of outstanding rent, late fees, and the cost of repairs to the Premises. Broe filed an answer and counterclaim that included claims for declaratory judgment, wrongful eviction, trespass, conversion, breach of contract, punitive damages, and attorney fees. On September 22, 2014, Broe filed a motion for partial summary judgment on his claims for declaratory judgment, wrongful eviction, trespass, and conversion, arguing that the Lease was invalid and thus the Tenant was not subject to the terms of the Lease. Carlisle filed his own motion for summary judgment on February 13, 2015, contending that Broe's claims for wrongful eviction and trespass should be dismissed as a matter of law.

The trial court entered an order on the cross-claims for summary judgment on July 17, 2015. This order consolidated the trial court's rulings on pending motions in this and several other related cases. With respect to the motions for summary judgment relevant to this case, the trial court denied Carlisle's motion for summary judgment as to Broe's claims for wrongful eviction and trespass, and awarded

3

summary judgment to Broe, finding Carlisle liable for wrongful eviction and trespass, Broe's conversion claim was withdrawn. This appeal followed.

In his sole enumeration of error, Carlisle argues that the trial court erred in denying his motion for summary judgment and in granting Broe's motion for summary judgment, based on its finding Carlisle liable for wrongful eviction and trespass. Because there remains a genuine issue of material fact as to whether Carlisle had authority to reenter the Premises, we must vacate the judgment of the trial court.

The first issue that must be decided is whether the Lease authorized Carlisle to reenter the Premises. We hold that paragraph 24 of the Lease did authorize reentry if the Tenant violated its terms.

> When a contract is at issue, the court first determines whether the language of the agreement is ambiguous. The language is ambiguous if it is susceptible to more than one meaning. If the language is clear and unambiguous, contract construction is not necessary, and the agreement will be enforced according to its clear and unambiguous terms.

*Azzouz v. Prime Pediatrics, P.C.*, 296 Ga. 602, 604 (1) (a) (675 SE2d 314) (2009) (citations omitted). Here, paragraph 24 of the lease states, unambiguously: "[i]f and whenever the Tenant is in default in payment of any money, whether hereby expressly reserved or deemed as rent, or any part of the rent, the Landlord may, without notice

4

or any form of legal process, enter upon the premises and seize, remove and sell the Tenant's goods, chattels and equipment from the Premises." While Carlisle's original communication to Broe cited paragraph 27 of the Lease as justification for reentry, he later asserted that he was entitled to reenter the Premises under paragraph 24 of the Lease.[1]

As a right of reentry did exist under paragraph 24 of the Lease, we must next determine whether the Tenant was in violation of paragraph 24. Carlisle contends that the Tenant was in default on payment of late fees for the month of October 2012, and therefore he had a right to reenter the Premises. Broe argues that the Tenant was not in default, and so Carlisle had no right of reentry. We find that a genuine issue of material fact exists as to whether the Tenant was in default, and so summary judgment was premature.

The Lease requires the Tenant to pay the rent on or before the first day of each month, and to pay a late fee of $25 per day for each day the rent is received after its due date. The parties agree that Broe tendered a check for the October 2012 rent to

---

[1]The trial court was correct in finding that paragraph 27 did not grant Carlisle a right of reentry. The title of paragraph 27 is "Additional Rights on Reentry" and the plain meaning of the language contained in the paragraph is that the rights listed are conditional on a right of reentry established independently of paragraph 27.

Carlisle on October 4, 2012. On October 8, 2012, Carlisle sent Broe an email informing him that the Tenant had been three days late on its October rent, and thus owed him $75 in late fees. The Tenant paid Carlisle the $75 late fee on October 10, 2012. On October 11, 2012, Broe discovered that the bank did not honor the rent check that Broe had given Carlisle for the October rent payment. When Broe discovered that his original rent check failed to clear the bank, he sent Carlisle a second rent check, along with an additional $150 for late fees. However, on October 12, 2012, the bank honored the first rent check Broe had delivered to Carlisle. The trial court found that as a matter of law the Tenant was not in default, and therefore Carlisle had no right of reentry. However, we find that there is an issue of material fact as to whether the Tenant was in default.

The trial court found that when Carlisle accepted the rent check on October 4, 2012, he "impliedly extended the time of the payment of the rent until the bank . . . either paid [the check] or returned it." To support this finding, the trial court cited to this Court's opinion in *Matlock v. Brown*, 98 Ga. App. 579, 580 (106 SE2d 180) (1958) (physical precedent only) for the principle that "[b]y acceptance of the check the plaintiff impliedly extended the time of the payment of the rent until the bank on which the check was drawn either paid it or returned it to the bank in which it was

6

deposited within a reasonable time from the time of issue." This is an accurate statement of this Court's holding in that specific case, yet it is an incomplete statement of the law.

The trial court pointed out in its order, quite correctly, that the rule is a logical one. Otherwise a landlord might accept a rent check and then charge late fees for the days between the date the check was tendered and the date the check cleared the bank. However, it is also true that under a blanket application of this rule a tenant could deliver a bad check to a landlord, and then avoid the payment of late fees for the days between the date the check was tendered and the date the check was dishonored. Such an outcome is as undesirable as the prospect of a landlord holding a rent check for the express purpose of assessing late fees against her tenant.

A more reasonable interpretation of the law would be that by accepting a rent check, a landlord impliedly extends the time of the payment of the rent until the bank on which the check was drawn honors the check. However, if the check is not honored by the issuing bank, then the time of the payment of the rent is not impliedly extended from the date the check was tendered, and the rent will not be deemed to have been paid until a form of payment has been honored by the issuing bank, or some other form of payment has been tendered. See generally *John N. Sims & Sons*

7

*v. Bolton*, 138 Ga. 73 (74 SE 770) (1912) (check tendered in payment for a mule was not considered payment until it was actually paid by the drawee bank). This does not amount to an overturning of our decision in *Matlock v. Brown*. In that case, Judge Quillian concurred specially, stating: "I concur in the result, but do not agree that the landlord by accepting the check extended the time for payment of rent beyond the date on which the check was received by him." *Matlock*, supra 581. Accordingly, the holding in *Matlock v. Brown* is not binding precedent but acts as physical precedent only. We simply clarify that holding.

Additionally, it is well-settled that the payee of a check is potentially subject to various forms of detriment should a check be dishonored.

> [T]he payee might allow the giver of the check to continue in possession of rented property as a result of the representation that the check was good. The payee might very well deposit the bad check in payee's account and proceed to write checks on the account without knowledge that the check received would not be honored. There are many other acts which the payee might have performed to his own detriment as a result of a bad check being given to him.

*Cobb v. State*, 246 Ga. 567, 569 (2) (272 SE2d 299) (1980). Accordingly, when a tenant tenders rent in the form of a check, the time of payment is impliedly extended

8

under the assumption that the instrument will be honored. Should it not be honored, the tenant loses the presumption of timely payment.

In this case, the first rent check was tendered on October 4, 2012, and thus the time for payment was impliedly extended with the presumption that the check would be honored. However, the check was not honored initially, and there is no argument that the bank incorrectly dishonored it. Upon discovery that the first check was dishonored, Broe sent a second check along with additional late fees to Carlisle. The addition of the late fees to the second rent check indicates that Broe was aware that the Tenant was subject to further late fees as a result of the first check being dishonored. However, the record is unclear as to whether Broe ever actually tendered the second rent check to Carlisle, or if Carlisle accepted such a check. Further, the fact that the first rent check was resubmitted by the bank and eventually honored does not mean payment was made on October 4. The Tenant was in default when the original check was first dishonored. Thus, the rent is deemed to have been paid on October 12, 2012, the date the check was finally honored.

Carlisle's argument that the late fees accrued until the funds from the rent check were made available in his bank account is unpersuasive. The check was honored by the issuing bank on October 12, and any delay between the time it was

honored and the time it was made available in his account is an issue between Carlisle and his bank. Thus, Carlisle cannot charge the Tenant late fees for the days between the time the check was honored and the time the funds were deposited in his account.

In light of our preceding discussion, genuine issues of material fact still exist as to the amount in late fees the Tenant owed, whether or not those late fees were in fact paid, inasmuch as they relate to Carlisle's right to reenter the Premises. Accordingly, the grant of summary judgment in favor of Broe on his claims of wrongful eviction and trespass, and the denial of summary judgment as to Carlisle on the same is hereby vacated, and the trial court is ordered to make determinations consistent with this opinion.

*Judgment vacated and case remanded. Ellington, P. J., and Branch, J., concur.*