**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
**_physically received_ in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 10, 2015**

# In the Court of Appeals of Georgia

A14A2007. BRAZEAL v. NEWPOINT MEDIA GROUP, LLC.

BARNES, Presiding Judge.

This case involves a contractual dispute between Plaintiff David Brazeal and his former employer, Defendant NewPoint Media Group, LLC, regarding whether Brazeal was owed severance pay after NewPoint declined to renew his employment contract for an additional one-year term. The trial court denied Brazeal's motion for summary judgment, and granted NewPoint's cross-motion for summary judgment, concluding that NewPoint was not required to pay severance to Brazeal as a matter of law. In reaching this conclusion, the trial court reviewed Brazeal's employment contract and determined that it plainly and unambiguously distinguished between the non-renewal of his contract at the end of a term and the termination of his

employment without cause, requiring severance pay only in the latter circumstance. Brazeal now appeals. For the reasons discussed below, we affirm.[1]

Summary judgment is appropriate if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). "Contract disputes are particularly well suited for adjudication by summary judgment because construction of contracts is ordinarily a matter of law for the court." (Citation and punctuation omitted.) *Grot v. Capital One Bank (USA), N.A.*, 317 Ga. App. 786, 793 (6) (732 SE2d 305) (2012). On appeal from a trial court's grant or denial of summary judgment, we "conduct a de novo review, construing all reasonable inferences in the light most favorable to the nonmoving party." *Bank of North Ga. v. Windermere Dev.*, 316 Ga. App. 33, 34 (728 SE2d 714) (2012). So viewed, the record shows as follows.

---

[1] Pursuant to OCGA § 9-11-12 (b) (6), NewPoint also filed a motion to dismiss Brazeal's complaint for failure to state a claim upon which relief could be granted. In the trial court's order granting summary judgment to NewPoint and denying it to Brazeal, the court granted NewPoint's motion to dismiss for the same reasons relating to the construction of the employment contract. On appeal, in addition to challenging the trial court's summary judgment rulings, Brazeal enumerates as error the trial court's grant of NewPoint's motion to dismiss. This enumeration is moot, however, because the trial court granted NewPoint's cross-motion for summary judgment on the same claims at issue in the motion to dismiss. See *Ostuni Bros. v. Fulton County Dept. of Public Works*, 184 Ga. App. 406, 409 (4) (361 SE2d 668) (1987).

Brazeal was hired as Chief Financial Officer ("CFO") of NewPoint pursuant to an employment agreement dated June 28, 2012 (the "Agreement"). Section 1 of the Agreement provided that Brazeal's initial term of employment would be for one year and would automatically renew for additional one-year periods unless Brazeal or NewPoint provided to the other party written notice of "non-renewal":

> 1. **Term**. The term of Employee's employment will commence (the "**Start Date**") on the later of (a) the date of this Agreement and (b) the date on which the Company acquires substantially all of the assets of Network Communications, Inc. (the "**Seller**"), and continue for a period of one year (the "**Initial Term**") and shall thereafter automatically renew for additional twelve (12) month periods (each, a "**Renewal Term**") unless written notice of non-renewal is given by one party to the other at least ninety (90) days prior to the expiration of the Initial Term or any Renewal Term, as applicable. Employee's actual term of employment by the Company under this Agreement is referred to as the "**Term**." The provisions of Section 8 through 11 hereof shall survive the termination of Employee's employment with the Company in accordance with their respective terms.

(Emphasis in original.)

"Notwithstanding Section 1," Section 6 of the Agreement provided NewPoint with the ability to terminate Brazeal's employment at any time "for any reason or for no reason whatsoever, with or without Cause," and Brazeal with the ability to resign

3

his employment at any time "for any reason or for no reason whatsoever," if certain notice requirements were met:

> 6. ***Ability to Terminate***. Notwithstanding Section 1, Employee understands and agrees that the Company reserves the right upon thirty (30) days prior written notice (which notice will not be required in the event of termination for Cause, in which case termination shall be effective on the date of the notice) to terminate Employee's employment with the Company at any time for any reason or for no reason whatsoever, with or without Cause. Likewise, Employee may Resign his employment with the Company at any time (upon thirty (30) days prior written notice) for any reason or for no reason whatsoever. Employee's employment by the Company will automatically terminate upon Employee's death or Permanent Disability.

Section 7 of the Agreement then addressed the obligations of the parties upon "termination" of Brazeal's employment, including a subsection addressing NewPoint's obligation to pay severance to Brazeal in the event of his "termination . . . without Cause":

> 7. ***Termination Obligations***.
>
> . . .

(b) Following the Company's termination of Employee's employment without Cause, . . .

(i) the Company will continue to pay Employee, in accordance with the Company's usual payroll practices and subject to all applicable withholding and deductions, Employee's then current Base Salary for a period of nine (9) months (the "**Severance Period**").

(Emphasis in original.)

Additionally, Section 8 of the Agreement addressed Brazeal's obligation to refrain from disclosing and using certain confidential and proprietary information belonging to NewPoint, and Section 9 gave NewPoint certain rights, title, and interest in Brazeal's works of authorship created for the benefit of the company during the term of his employment. Section 10 contained restrictive covenants agreed to by Brazeal, including non-compete and non-solicitation clauses, and Section 11 contained a "non-disparagement" clause whereby Brazeal agreed not to engage in any conduct or make any statements disparaging to NewPoint.

Lastly, Section 14 of the Agreement contained a list of definitions. "Cause" was defined to include dishonesty in business dealings with the NewPoint, diversion of corporate opportunities, certain criminal arrests and convictions, neglect of duties,

5

failure to comply with directives from NewPoint's Board of Directors, intentional misrepresentations or omissions, and the material breach of any provision of the Agreement. Section 14 did not define "termination."

Brazeal began serving as CFO at NewPoint in June 2012, but in a March 2013 letter, NewPoint's Board of Directors notified him that the company would not be renewing his initial one-year term of employment for an additional term "in accordance with Section 1 of the Agreement." The letter complied with the 90-day notice requirement imposed by Section 1 of the Agreement. Brazeal's last day as CFO was in late June 2013.

After NewPoint refused to pay him any severance, Brazeal sued the company for, among other things, breach of contract. Brazeal's complaint alleged that NewPoint owed Brazeal nine months of severance pay under Section 7 of the Agreement because it declined to renew his initial term of employment without "Cause," as that term was defined in the Agreement. NewPoint answered, denying that it owed Brazeal any severance pay based on its decision not to renew his initial term of employment under Section 1 of the Agreement.

Brazeal moved for summary judgment on his contract claim, and Newpoint filed a cross-motion for summary judgment. The parties presented competing

interpretations of when severance pay was owed under the Agreement. According to Brazeal, the Agreement was ambiguous as to whether NewPoint had to pay severance to him under Section 7 if it chose to end his employment "without Cause" through a "non-renewal" of his term of employment under Section 1. In light of this ambiguity, Brazeal contended that the rules of contract construction and parol evidence ought to be consulted and would lead to the resolution of any ambiguity in his favor so as to require the payment of severance.

In contrast, NewPoint contended that by its plain and unambiguous terms, the Agreement drew a distinction between the "non-renewal" of Brazeal's initial term of employment under Section 1 and the "termination" of his employment "without Cause" under Section 6, and that the requirement of paying severance in Section 7 arose only if NewPoint terminated Brazeal's employment "without Cause" under Section 6. According to NewPoint, because Brazeal's initial term of employment was not renewed, and because severance was required in the event of "termination . . . without Cause" but not in the event of a "non-renewal," Brazeal was not entitled to severance pay as a matter of law.

The trial court agreed with Newpoint's interpretation of the Agreement, resulting in the court denying Brazeal's motion for summary judgment and granting

7

NewPoint's cross-motion for summary judgment.[2] In its order, the trial court concluded that the Agreement drew a distinction between a decision by either party not to renew Brazeal's initial term of employment for another one-year term (Section 1), and a decision to terminate Brazeal "without Cause" during his term of his employment (Section 6), with severance pay being owed only in the latter circumstance (Section 7). Because the undisputed record showed that Newpoint, through its March 2013 letter, had exercised its right not to renew Brazeal's initial term of employment in accordance with the notice requirements of Section 1, the trial

---

[2] Brazeal's complaint included a declaratory judgment claim seeking a ruling from the trial court that Brazeal was entitled to nine months of severance pay. The trial court granted summary judgment in favor of NewPoint on the declaratory judgment claim, but Brazeal does not contest or present any legal argument challenging that ruling on appeal. Brazeal thus has abandoned any claim of error relating to his declaratory judgment claim. See Court of Appeals Rule 25(a) (3) and (c) (2); *Home Depot U.S.A. v. Wabash Nat. Corp.*, 314 Ga. App. 360, 365 (1) (724 SE2d 53) (2012).

Brazeal's complaint also included a claim for breach of the implied covenant of good faith and fair dealing, alleging that NewPoint acted in bad faith in exercising its discretion to terminate Brazeal's employment by "non-renewal" under Section 1 of the Agreement rather than by termination "without Cause" under Section 6 in an improper effort to avoid paying him any severance. Although NewPoint moved to dismiss Brazeal's implied covenant claim and both parties moved for summary judgment on that claim, the trial court did not rule on the claim in its order. Because there has been no ruling on the implied covenant claim by the trial court, any issues relating to that claim are not ripe for appellate review. See *Hardin v. Leitch*, 232 Ga. App. 432 (2) (502 SE2d 288) (1998); *Sharpnack v. Hoffinger Indus.*, 223 Ga. App. 833, 836 (3) (479 SE2d 435) (1996).

court determined that Brazeal was not entitled to severance pay as a matter of law. This appeal followed in which Brazeal challenges the trial court's construction of the Agreement.

We conclude that the trial court properly construed the Agreement to not require the payment of severance to Brazeal. Construing the language of a contract "presents a question of law for the court, unless the language presents an ambiguity that cannot be resolved by the rules of construction." *Mun. Elec. Auth. of Ga. v. Gold-Arrow Farms*, 276 Ga. App. 862, 866 (1) (625 SE2d 57) (2005). The "cardinal rule" of construction is to ascertain the contracting parties' intent, OCGA § 13-2-3, and "where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties." (Citation and punctuation omitted.) *Azzouz v. Prime Pediatrics, P.C.*, 296 Ga. App. 602, 607 (3) (675 SE2d 314) (2009). "To determine the intent of the parties, all the contract terms must be considered together in arriving at the construction of any part, and a construction upholding the contract in whole and every part is preferred." *Mun. Elec. Auth. of Ga.*, 276 Ga. App. at 866 (1). Moreover, "a contract should not be construed in a manner that would render any of its provisions meaningless or mere surplusage."

9

(Citation and punctuation omitted.) *Olde Towne Tyrone, LLC v. Multibank 2009-1 CRE Venture, LLC*, 326 Ga. App. 322, 329 (1) (b) (756 SE2d 558) (2014).

In *Kushner v. S. Adventist Health & Hosp. Sys.*, 151 Ga. App. 425, 426-427 (1) (260 SE2d 381) (1979), we addressed whether an employer's decision not to renew an employee's contract for an additional term constituted a "termination" under the terms of that contract. The employment contract in *Kushner* contained two subparagraphs relevant to the analysis: Subparagraph 1 addressed the "non-renewal" of the employee's contract for an additional term (which required only that notice be given to the employee), and Subparagraph 2 addressed the "termination" of the employee during his term of employment (which required prior consultation and a hearing). Id. The employer provided notice to the employee that it was not renewing the initial term of his employment, but failed to provide him with a hearing. Id. The employee then sued, claiming that he was entitled to a hearing, or that, at a minimum, the contract was ambiguous on this point. Id. We rejected the employee's argument:

> The construction . . . urged by [the employee] is both unreasonable and unnatural. Subparagraph 1 deals exclusively with renewal and nonrenewal of the contract. Subparagraph 2 is concerned with "termination" of the contract "during" a three-year period. *While, conceptually, nonrenewal might be considered a form of termination of a contract, this categorization is of no consequence where the parties*

10

*to an agreement deal with nonrenewal and termination as separate matters.* Where the language is unambiguous and but one reasonable construction of the contract is possible, the court must expound it as made.

(Emphasis supplied.) Id. at 427 (1). Thus, because the employment contract in *Kushner* contained two separate paragraphs setting forth different procedural requirements for "non-renewal" and "termination," we held that the two terms could not be treated as synonymous. Id.

*Kushner* controls the outcome of the present case. Section 1 of the Agreement allows either party to decline to renew Brazeal's employment contract at the end of a term, if written notice is provided at least 90 days before the term ends, while Section 6 allows NewPoint to "terminate" Brazeal"without Cause" at any time during his employment if the company provides 30 days written notice to Brazeal before his termination. Therefore, under the Agreement, "non-renewal" and "termination . . . without Cause" give rise to different procedural requirements, and, in accordance with the reasoning of *Kushner*, the two concepts cannot be treated as synonymous. Indeed, to eliminate the distinction between the two concepts would be to violate the well-established principle that each provision of a contract "is to be given effect and interpreted so as to harmonize with the others" in a manner that does not lead to

11

redundancy. *Thomas v. B & I Lending, LLC*, 261 Ga. App. 39, 42 (1) (581 SE2d 631) (2003). See *Woodbery v. Atlas Realty Co.*, 148 Ga. 712, 715 (98 SE 472) (1919) ("[N]one of the words [in a contract] are to be considered as redundant, if a reasonable intendment can be given them").

Because "non-renewal" under Section 1 and "termination . . . without Cause" under Section 6 must be treated as separate and distinct concepts under the rules of construction and the reasoning of *Kushner*, NewPoint was not required to pay severance to Brazeal when it declined to renew his initial term of employment pursuant to Section 1 of the Agreement. This is because severance pay is owed under Section 7 of the Agreement only in the event of "termination . . . without Cause." Hence, when Sections 1, 6, and 7 of the Agreement are interpreted so as to harmonize with one another, it is clear that NewPoint did not breach the Agreement in failing to pay nine months of severance to Brazeal after the "non-renewal" of his initial term of employment, as the trial court correctly concluded.

Our conclusion that Section 7 of the Agreement was not intended to apply to the "non-renewal" of Brazeal's initial term of employment under Section 1 is buttressed by the fact that Section 1 expressly incorporates the obligations imposed by Sections 8-11 of the Agreement. Thus, when the parties wanted to impose

12

additional obligations in the context of the "non-renewal" of Brazeal's term of employment, they knew how to do so. It follows that when the parties failed to add the termination obligations imposed by Section 7 to the list of obligations incorporated into Section 1, "we must presume that [their] failure to do so was a matter of considered choice." (Citation and punctuation omitted.) *Auto-Owners Ins. Co. v. Parks*, 278 Ga. App. 444, 447 (1) (629 SE2d 118) (2006).

Brazeal argues, however, that the Agreement is ambiguous as to whether the obligation to pay severance imposed by Section 7 for "termination . . . without Cause" should apply to the "non-renewal" of his term of employment under Section 1, given that "termination" is never defined in the Agreement, and the dictionary definition of "termination" is broad enough to encompass the "non-renewal" of an employment contract. See Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/termination (defining "termination" as "an act of ending something" or "the act of making a person leave a job: the act of firing or dismissing someone"). See also Black's Law Dictionary (9th ed. 2009) (defining "termination" to include "[t]he act of ending something" and "[t]he complete severance of an employer-employee relationship"). Brazeal also emphasizes that "non-renewal" and "termination" have been considered equivalent by some

13

courts in other contexts, such as employment discrimination. See, e.g. *Saridakis v. S. Broward Hosp. Dist.*, 681 F. Supp. 2d 1338, 1348 (S.D. Fla. 2009) ("[T]he majority of courts in recent years have deemed non-renewal the equivalent of termination, and therefore an adverse employment action for purposes of a Title VII discrimination analysis.").

Brazeal's argument is misplaced. The fact that "termination" is not expressly defined in the Agreement or can have a broader meaning in other contexts does not change the fact that Sections 1 and 6 of the Agreement, when construed together, make clear that a "termination . . . without Cause" is a separate and distinct concept from the "non-renewal" of Brazeal's term of employment, as previously explained. A word or phrase in a contract cannot be considered in the abstract or in a vacuum, but instead must be gauged by the words that surround it. See *Techwerks v. Retail Technologies Corp.*, 235 Ga. App. 144 (509 SE2d 84) (1998) ("[A] contract should be construed by examining the entire agreement, not by speculating about isolated words, clauses or provisions thereof.").

Brazeal also focuses on the phrase "[n]otwithstanding Section 1" found at the beginning of Section 6 and asserts that it means "in spite of." According to Brazeal, use of this phrase means that "in spite of" Section 1, if NewPoint ended its

14

employment relationship with him "without Cause," NewPoint had to pay him severance under Section 7.

We agree with Brazeal's definition of the word "notwithstanding." As explained in our precedent, "'notwithstanding' means 'without prevention or obstruction from' or 'in spite of.'" (Citation and punctuation omitted.) *Record Town v. Sugarloaf Mills L.P. of Ga.*, 301 Ga. App. 367, 370 (3) (687 SE2d 640) (2009). But we disagree with Brazeal's interpretation of the phrase "[n]otwithstanding Section 1" as used in Section 6 of the Agreement. Inclusion of the phrase "notwithstanding Section 1" at the beginning of Section 6 simply means that the right of the parties to decline to renew Brazeal's employment at the end of an employment term (Section 1) does not alter the right of NewPoint to "terminate" Brazeal "with or without Cause" during the course of that term (Section 6). In contrast, Brazeal's interpretation of the phrase would in effect move "[n]otwithstanding Section 1" from Section 6 to Section 7, and thus would require us "to rewrite or revise [the] contract under the guise of construing it," which, of course, we are not at liberty to do. (Citation and punctuation omitted.) *Rabun & Assoc. Constr. v. Berry*, 276 Ga. App. 485, 487 (1) (623 SE2d 691) (2005).

15

Finally, Brazeal claimed in his affidavit filed in support of his summary judgment motion that his interpretation of the Agreement as providing for severance pay in the event of "non-renewal" was supported by conversations he had with NewPoint's agent while negotiating his employment contract and a non-binding May 31, 2012 "Summary of Terms." But "[w]here an action is brought upon an unambiguous contract, parole evidence may not be introduced to explain the intention of the parties in entering into the agreement." *Clarke v. Fanning*, 127 Ga. App. 86, 87 (2) (192 SE2d 565) (1972).

For these combined reasons, we conclude that Agreement reached between NewPoint and Brazeal plainly and unambiguously drew a distinction between the "non-renewal" of Brazeal's term of employment (requiring no payment of severance) and "termination . . . without Cause" (requiring payment of severance). Because the uncontroverted evidence showed that NewPoint simply declined to renew Brazeal's initial term of employment, the trial court properly granted summary judgment to NewPoint, and denied it to Brazeal, on Brazeal's claim for breach of contract predicated on NewPoint's failure to pay him any severance.

*Judgment affirmed. Boggs and Branch, JJ., concur.*

16