**FIRST DIVISION
BARNES, P. J.,
GOBEIL and MARKLE, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 29, 2021**

# In the Court of Appeals of Georgia

A21A0818. DEAN v. DEAN.

MARKLE, Judge.

In this post-divorce action regarding the construction of an incorporated settlement agreement ("Agreement"), we granted Cynthia Dean's application for discretionary appeal to review the trial court's summary judgment order finding that she was responsible for paying a portion of past due tax liabilities. On appeal, Cynthia contends that the trial court erred by misconstruing the terms of the Agreement's tax provision, and because she was entitled to relief from the tax liabilities under the Agreement's indemnity provision. We conclude that the trial court erred in its construction of the tax provision and, therefore, we reverse.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). In reviewing a grant or denial of summary

judgment, we owe no deference to the trial court's ruling and we review de novo both the evidence and the trial court's legal conclusions. Similarly, the construction of a contract, including the existence or nonexistence of any ambiguities found therein, represents a question of law for the court, subject to a de novo standard of review on appeal.

(Citations and punctuation omitted.) *Mitchell & Assoc. v. Global Systems Integration*, 356 Ga. App. 200 (844 SE2d 551) (2020).

The relevant facts are not in dispute. Cynthia and John Dean were married in 2002, and divorced in 2014. The divorce decree incorporated the Agreement, which included a provision governing any future audit of the former couple's jointly filed taxes. Specifically, the Agreement provided:

In the event any of the parties' joint tax returns for tax years 2002-2012 are audited, Husband agrees to pay and be solely responsible for any and all costs associated with defending such audit, including but not limited to attorney's fees and accountant's fees and to indemnify and hold Wife harmless for same. If it is determined that any monies are owed to any federal or state taxing authority as the result of an audit, including but not limited to taxes, tax on tax, deficiencies, penalties and interest, said amounts will be equally divided between the parties.

Additionally, the Agreement included a broad indemnity clause, under which Cynthia was indemnified from all liabilities associated with John's solely-owned

business, JCD, Inc. JCD is a designated S corporation; therefore, it is not taxed on its corporate profits, but instead passes its profits and the resulting tax burden to its shareholders. *Sutherlin v. Sutherlin*, 301 Ga. 581, 584 (II) (802 SE2d 204) (2017).

Four years after their divorce was finalized, John applied to the Internal Revenue Service's (IRS) voluntary disclosure program due to income earned by JCD that was not reported on the marital tax returns for 2011 and 2012, the last years he and Cynthia filed jointly.[1] The voluntary disclosure program offers potential immunity from criminal prosecution to taxpayers who admit and seek to remedy criminal tax violations prior to the opening of an IRS investigation. Jay A. Soled, *The IRS's Voluntary Disclosure Program: Need for Codification*, 37 Ga. State Univ. L. Rev. 957, 959 (2021). In his disclosure, John declared that the IRS *had not* commenced an audit or criminal investigation at that time. Nor had either party received a notice from the IRS regarding a deficiency or audit for their 2011 and 2012 returns. Shortly after filing the disclosure, John voluntarily amended the 2011 and 2012 marital tax returns, and paid an estimation of the taxes, interest, and penalties owed for those two years in the total amount of $338,281.

---

[1] John also sought to amend his tax returns for 2013-2015 under the voluntary disclosure program, but those returns are not at issue in this appeal.

3

Ultimately, the IRS accepted John's application and payments, and executed a closing agreement, specifically finding:

the Taxpayers underreported their Federal individual income tax liabilities for the tax years 2011 and 2012 mainly as a result of a regular and reoccurring practice of not reporting taxable receipts of the Corporate entity JCD, Inc. which caused the understatement of their gross income for the tax years 2011 and 2012. Although the closing agreement identifies Cynthia and refers to "Taxpayers" throughout, it is undisputed that she did not participate in the voluntary disclosure process, and did not sign the disclosure, the amended tax returns, or the closing agreement.

Thereafter, John sought reimbursement from Cynthia for half of the amount he paid to the IRS under the tax provision of their Agreement. Cynthia refused, and filed this declaratory action to determine whether she is obligated to reimburse him. Subsequently, John filed a contempt action, seeking to compel Cynthia to pay her alleged share of the tax burden. After these actions were consolidated, the parties filed cross-motions for summary judgment.

Following a hearing, the trial court granted summary judgment in favor of John, finding that Cynthia was obligated to pay half of the tax liabilities for 2011 and 2012 based on the unambiguous terms of the tax provision of the Agreement.

4

Specifically, the trial court found that the term "audit," as used in the tax provision, included self-audits performed by John, audits performed by his tax attorneys and forensic accountants, and audits performed by the IRS during the voluntary disclosure process. It further found that the amount due under the amended tax returns "had nothing to do with the separate corporate legal entity JCD[.]" Cynthia applied for discretionary appeal, which we granted, and this appeal followed.

1. In related enumerations of error, Cynthia argues that the trial court misconstrued the term "audit" in the tax provision, and thus erred by finding her liable for any of the additional taxes due for 2011 and 2012. We agree.

We review the construction of incorporated settlement agreements in divorce cases de novo. *Messick v. Messick*, 359 Ga. App. 481, 482 (3) (858 SE2d 758) (2021); see also *Sutherlin*, 301 Ga. at 582; OCGA § 13-2-1 ("The construction of a contract is a question of law for the court."). As we have explained,

> [s]ettlement agreements in divorce cases are construed in the same manner as all other contractual agreements. The meaning and effect of the settlement agreement should be determined according to the usual rules for the construction of contracts, the cardinal rule being to ascertain the intention of the parties. In construing the contract, we are limited to those terms upon which the parties have actually agreed, for absent the parties' mutual assent, there is no enforceable contract.

5

(Citations and punctuation omitted.) *Messick*, 359 Ga. App. at 482 (3); OCGA § 13-2-3. Thus,

> where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties. To determine the intent of the parties, all the contract terms must be considered together in arriving at the construction of any part, and a construction upholding the contract in whole and every part is preferred. Moreover, a contract should not be construed in a manner that would render any of its provisions meaningless or mere surplusage.

(Citations and punctuation omitted.) *Brazeal v. Newpoint Media Group*, 331 Ga. App. 49, 53-54 (769 SE2d 763) (2015).

Here, the trial court found that the Agreement's tax provision was unambiguous, and we agree.[2] See *Lowry v. Fenzel*, 331 Ga. App. 603, 605 (1) (769 SE2d 522) (2015) ("Ambiguity in a contract is defined as duplicity, indistinctness, or an uncertainty of meaning or expression.") (citation omitted). However, we do not

---

[2] John argues that we must construe the tax provision against Cynthia because her counsel drafted it. This argument is unavailing in light of our finding that the provision is unambiguous when construed in its entirety. Cf. *Considine Co. of Ga. v. Turner Communications*, 155 Ga. App. 911, 914-915 (5) (273 SE2d 652) (1980) ("If there is any ambiguity about the construction of a written contract, it will be construed most strongly against the party that prepared it."); OCGA § 13-2-2 (5).

agree with the trial court that the term "audit" includes any audits John performed or as a consequence of his pursuit of, and participation in, the voluntary disclosure program.[3]

"It is axiomatic that contracts must be construed in their entirety and in a manner that permits all of the terms contained therein to be consistent with one another." *Kreimer v. Kreimer*, 274 Ga. 359, 361 (1) (552 SE2d 826) (2001); see also *Brazeal*, 331 Ga. App. at 53. Here, however, the trial court overlooked one of only two sentences in the tax provision in which the terms "audit" or "audited" appear. Specifically, the trial court's order made no reference to the first sentence of the relevant clause:

> In the event any of the parties' joint tax returns for the years 2002-2012 are *audited*, Husband agrees to pay and be solely responsible for any and all costs associated *with defending such audit*[.]

(Emphasis supplied.)

This sentence is essential to determine the intention of the parties. See, generally, *Magnetic Resonance Plus v. Imaging Systems Intl.*, 273 Ga. 525, 527 (2)

---

[3] The fact that our interpretation of the term "audit" differs from that of the trial court does not render the term ambiguous. *Magnetic Resonance Plus v. Imaging Systems Intl.*, 273 Ga. 525, 526-527 (1) (543 SE2d 32) (2001).

7

(543 SE2d 32) (2001) ("Where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties.") (citation and punctuation omitted); *Brazeal*, 331 Ga. App. at 56 ("A word or phrase in a contract cannot be considered in the abstract or in a vacuum, but instead must be gauged by the words that surround it."). The key verb, "defend," is commonly defined as "to drive danger or attack away from" or "to maintain or support in the face of argument or hostile criticism."[4] Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/defend; see also *Capitol Color Printing v. Ahern*, 291 Ga. App. 101, 107 (1) (661 SE2d 578) (2008) ("This Court has long recognized that dictionaries may supply the plain and ordinary meaning of a word.") (citation and punctuation omitted); OCGA § 13-2-2 (2). Thus, the type of audit contemplated under the tax provision was *not* an audit voluntarily

---

[4] The legal definition of "defend" tracks the common usage. Black's Law Dictionary (11th ed. 2019) defines the term, in pertinent part, as follows:

> 1. To do something to protect someone or something from attack. 2. To use arguments to protect someone or something from criticism or to prove that something is right. 3. To do something to stop something from being taken away or to make it possible for something to continue. 4. To deny, contest, or oppose (an allegation or claim)[.]

8

initiated by one of the parties, as here, but one that would be *defended against* — an audit necessarily initiated by a third party, such as an IRS audit in the traditional sense. To find otherwise would improperly render the term "defend" mere surplusage. *Brazeal*, 331 Ga. App. at 53; see also *Sutherlin*, 301 Ga. at 585 (II) (A) ("The courts should avoid any construction that renders portions of the contract language meaningless.") (citations and punctuation omitted).

Accordingly, construing the tax provision in its entirety, as we must, the back taxes at issue here were not determined "as the result of an audit." See *Brazeal*, 331 Ga. App. at 53; see also *Knott v. Knott*, 277 Ga. 380, 381 (2) (589 SE2d 99) (2003) (considering entire section of divorce agreement to determine parties' clear intent). Rather, they were determined as a result of John's voluntary entry into an amnesty program, which was clearly not contemplated by the terms of the provision. Accordingly, the trial court erred by finding Cynthia was obligated to pay half of the tax burden resulting from John's entry into the voluntary disclosure program, and we reverse.[5]

---

[5] In his arguments on appeal, John repeatedly refers to $300,000 in cash that Cynthia allegedly removed from the safe in the marital residence. However, John stated no claim for this alleged debt in his contempt action, and, therefore, we decline to consider it. See *Pneumo Abex v. Long*, 357 Ga. App. 17, 29 (2) (849 SE2d 746) (2020) ("As we have repeatedly explained, this is a Court for the correction of errors

9

2. In light of our ruling in Division 1, we need not address Cynthia's argument with regard to the indemnity provision of the Agreement.

*Judgment reversed. Barnes, P. J., and Gobeil, J., concur*.

---

of law, and if the trial court has not ruled on an issue, we will not address it.") (citations and punctuation omitted). Additionally, John refers to statements Cynthia allegedly made during her second deposition; however, this deposition transcript was never filed into the record below. Although our analysis above was limited to the four corners of the Agreement, we take this opportunity to remind counsel that "[a] brief or an attachment thereto cannot be used as a procedural vehicle for adding evidence to the record. We must take our evidence from the record and not from the brief of either party." (Citation and punctuation omitted.) *James v. Hosp. Auth. of City of Bainbridge*, 278 Ga. App. 657, 660 (2) (629 SE2d 472) (2006).

10