[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11086

Non-Argument Calendar

_____

TALCOTT RESOLUTION LIFE AND ANNUITY INSURANCE
COMPANY,

Plaintiff-Counter Defendant-Appellee,

*versus*

EMILY BOYLES HADDEN,
Individually and as Natural Guardian of
C.R.H., a minor,
BRENT ANDREW HADDEN,

Defendants-Cross Defendants-Appellants,

2                    Opinion of the Court                    22-11086

PHOENIX PRINTING GROUP, INC.,

Defendant-Counter Claimant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 1:20-cv-00074-JRH-BKE

_____

Before JILL PRYOR, BRANCH, and BRASHER, Circuit Judges.

PER CURIAM:

This case involves a tangle of issues of Georgia contract, insurance, and divorce law. At issue is the rightful recipient of a partial life insurance death benefit paid by Talcott Insurance Company, after the "Insured"—the late Joseph Hadden—passed away in February 2020. After the Insured's death, the Insured's former company, Phoenix Printing Group, Inc. ("PPG"), and the Insured's ex-wife, Emily Hadden,[1] both made competing claims for death benefits. Talcott Insurance Company then filed this interpleader action, deposited the disputed death benefit of

_____

[1] Hadden is suing on behalf of herself, her middle son and youngest minor child.

$1,000,000 into the court's registry, and was dismissed as a party to the lawsuit.

On a motion for summary judgment, the district court found that Hadden had no vested interest in the life insurance policy as a matter of law and that the doctrine of unclean hands did not apply to bar summary judgment in favor of PPG. We agree with the district court but for a different reason—the Insured never owned the policy.

## I.    Background

The Insured was 1/3 owner of PPG, an Augusta-based screen-printing business that he owned and operated alongside his brother, Jeffery Hadden. In May 2008, the Insured signed an "Acknowledgment and Consent to Employer-Owned Life Insurance" that stated "[t]he employer/applicable policyholder has given me notice that it intends to purchase a life insurance policy or policies on my life" and that "[t]he employer/applicable policyholder will own the policy." In June 2010, PPG acquired a life insurance policy worth $3,000,000 ("the Talcott policy") for the life of the Insured.[2] The policy owner is identified as PPG on the application and on the beneficiary designation forms.

---

[2] In order to protect the owners' and shareholder investments, the owners "entered into a shareholder buy-sell agreement through which [the owners] agreed upon a purchase mechanism for the purchase of each shareholder's interests for $3 million." According to PPG, in order to ensure funding for the sale, PPG acquired a life insurance on the lives of each of the owners.

When the Insured and Hadden divorced in December 2012, they entered into a handwritten mediation and a settlement agreement under which the Insured agreed to maintain $1,000,000 in life insurance for the benefit of his children with his ex-wife as beneficiary. The settlement agreement says that "[t]he husband shall maintain a one million dollar ($1,000,000) life insurance policy insuring his life with the Wife named as beneficiary for an amount necessary to pay any alimony, child support or college education obligations . . . ." The mediation agreement states

> The husband will maintain his $1,000,000 life insurance policy with wife as beneficiary up to the amount necessary to pay any alimony[,] child support[,] or college education obligations husband may have at the time of his death. This obligation also includes vehicles to be purchased for two minor children. The balance will be held in trust solely for the benefit of the children.

The settlement and mediation agreements were incorporated into the divorce decree, although according to the settlement agreement, the mediation agreement controls: "[i]f there is any dispute as to the implementation of this Settlement Agreement or as to the terms and provisions of the Mediation Agreement, all as shown by the handwritten attachments hereto, which attachments shall govern . . . ." There is no evidence that at the time of the divorce decree, the Insured owned any policy.

Hadden was designated as a 33.33% beneficiary to the PPG's Talcott policy on the Insured's life on June 27, 2013. In December 2014, PPG bought out the Insured's interest in PPG, but the Talcott policy remained in place.[3] Unbeknownst to Hadden, in October 2016 PPG named itself the 100% primary beneficiary of the Talcott policy, removing Hadden as a 1/3 beneficiary.

Meanwhile, in 2015, Hadden filed a contempt action against the Insured for failing to comply with various terms of their divorce settlement agreement. The Insured then filed a motion for modification of the settlement agreement, which included a request that his "obligation to maintain a $1,000,000 life insurance policy also be eliminated or modified."

Following Hadden's contempt action and the Insured's modification action, in July 2017, they both agreed to "a complete and final settlement of the disputes between [the Insured and Hadden] set forth in the contempt action and the modification action, as well as all future obligations due under the divorce decree," which was entered by the Court as a Consent Final Order and Judgment. That document provided that "[Hadden] hereby forever releases and discharges, on behalf of herself and the minor children who may be beneficiaries, [the Insured] from any and all

---

[3] It is disputed whether Phoenix Printing paid for all the premiums to maintain the Talcott policy, or if the Insured agreed to do so.

obligations that are being claimed to be owed by him . . . under the terms and provisions of the divorce decree…"

The insured died in February 2020.

The district court found that Hadden had no vested interest in the Talcott policy under Georgia law because the divorce decree did not identify the Talcott policy with the requisite specificity. Hadden timely appealed.

## II.    Standard of Review

"We review a district court's grant of summary judgment *de novo*, view[ing] the evidence in the light most favorable to the non-moving party." *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc) (quotations omitted). Summary judgment is proper if the materials in the record indicate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.    Discussion

Hadden argues the district court erred in holding that Georgia law requires a divorce decree to identify the specific policy in which it purports to grant an interest and in failing to consider the handwritten mediation agreement attached to the divorce

settlement. Hadden also argues that the doctrine of unclean hands should apply to bar PPG from collecting under the Talcott policy.

"Settlement agreements in divorce cases are construed in the same manner as all other contractual agreements." *Buckner v. Buckner*, 755 S.E.2d 722, 725–26 (Ga. 2014). Under Georgia law, "where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties." *Brazeal v. Newpoint Media Grp., LLC*, 769 S.E.2d 763, 767 (Ga. Ct. App. 2015) (quotations omitted). And the parties are bound by the plain and unambiguous terms of the contract. *Buckner*, 755 S.E.2d at 726.

As an initial matter, the plain terms of the mediation agreement indicate that the Insured was required to "maintain **his** $1,000,000 life insurance policy."[4] But as there is no evidence in the record that the Insured owned a policy on his life, there is no policy in which Hadden could have had a vested interest. Hadden points to the Talcott policy, but it is owned by PPG, not the Insured. And even if Hadden had some claim to the Talcott policy, she released it in July 2017 when the Insured and Hadden entered into the Final Order which completely settled all remaining

---

[4] Although the settlement agreement referenced "a" $1,000,000 life insurance policy, per the settlement agreement, where there is any dispute as to the terms of the parties' agreement, the mediation agreement controls.

8                    Opinion of the Court                    22-11086

obligations due under the divorce decree.[5] *See Buckner*, 755 S.E.2d at 726 (explaining that parties to a divorce settlement are "bound by its terms").

Accordingly, the decision by the district court is affirmed.

**AFFIRMED.**

---

[5] Because we conclude that Hadden released any claim that she may have had to the Talcott policy when she entered into the 2017 settlement agreement for the contempt and modification actions, we do not reach Hadden's alternative argument on appeal that the doctrine of unclean hands should bar PPG from benefiting from the Talcott policy.